### ROGERS *v.* SCOTT.

### Opinion delivered April 23, 1917.

1. SALES—TITLE ACQUIRED—TITLE OF SELLER—EXCEPTION.—The general rule is that no man can get a title to personal property from a person who himself has no title to it. An exception to the rule is in the case of a *bona fide* purchaser, who will be protected, where the owner has conferred upon the seller the apparent right of property as owner, or disposal as his agent.
2. SALES—TITLE—ACTS OF SELLER—ESTOPPEL.—Whether the owner of certain personal property was estopped from asserting ownership as against a purchaser thereof from one whom the owner had invested with indicia of ownership, is a question for the jury.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; reversed.

*Morris M.* and *Louis M. Cohn,* for appellant.

1. Defendants' first instruction should not have been given. 53 Ark. 196; *Ib.* 380; 51 *Id.* 61, 75; 36 *Id.* 96;

19 *Id.* 319; 16 Cyc. 941, *et seq.*; 62 Ark. 84, 88, 91; 25 L. R. A. (N. S.) 760; 209 Fed. 758; 143 Pa. 815; 120 Md. 176; 87 Atl. 814; 211 Mass. 429, 97 N. E. 1094; 162 Mass. 72, 38 N. E. 29.

2.   The testimony as to the Cleora property should not have been admitted.   The two transactions were entirely independent.   101 Ala. 1, 13 So. 283; 33 S. W. 604; 121 N. Y. 57.

*S. H. Mann* and *L. C. Going,* for appellees.

1.   There was no error in admitting testimony as to the Cleora machinery.

2.   Instruction No. 1 was properly given.   2 Corpus Jur. 594, § 230; 24 Law Ed. U. S. 511; 59 Am. Rep. 502. No specific objections were made.   Taken in connection with other given, there was no error.

STATEMENT BY THE COURT.

George W. Rogers instituted an action in replevin against W. H. Scott and the Kemler Lumber Company to recover 29.87 tons of steel rails of the value of $657.14. The material facts are as follows:

George W. Rogers resides at Little Rock, Arkansas, and has been engaged in the banking business for the past thirty years.   In the first part of the year 1914, Rogers owned a lot of mill machinery consisting of a locomotive, log cars, railroad iron, and other machinery at Cleora, Louisiana.   At that time L. B. Brackin was engaged in selling second-hand machinery at Pine Bluff, Arkansas. On February 18, 1914, Rogers and Brackin entered into a written contract whereby the latter was to take charge of all the aforementioned machinery and ship the same to his place of business at Pine Bluff, Arkansas, and there dispose of it for the best price obtainable.   It was agreed that a certain stipulated price should be paid to Rogers after the machinery was sold, and that all that the machinery sold for above that price should be equally divided between Rogers and Brackin.   Rogers also had a lot of mill machinery and about thirty-six tons or more of steel rails at Reeder, Arkansas, where he had formerly

operated a mill. In May, 1914, according to Rogers' own testimony, he authorized Brackin to load the number two rails and the other machinery on the railroad cars and have the same hauled to Brackin's yard at Pine Bluff. He testified that it was agreed that Brackin should sell the same as Rogers' agent, but only upon terms satisfactory to him; that he told Brackin to stack the number one rails at Reeder, Arkansas, but did not authorize him to sell the same or exercise any control whatever over them; that in March, 1916, he discovered that a carload of steel rails had been shipped from Reeder, Arkansas, on December 14, 1914, consigned to W. H. Scott, at Hughes, Arkansas; that this was the first knowledge that he had that the rails had been removed; that he made demand for the return of the same of Scott, and that Scott refused to return them. Other evidence was introduced tending to corroborate the statement of Rogers.

On the other hand, L. B. Brackin testified that Rogers gave him authority to sell the rails in controversy; that he saw an advertisement in the paper that W. A. Scott wished to buy steel rails for himself and the Kemler Lumber Company; that he answered this advertisement and got in correspondence thereby with Scott and finally sold to him and the lumber company the steel rails in question. His testimony was also corroborated by other evidence.

It is also shown in evidence that Scott at the time he purchased the rails made no inquiry of Brackin as to who owned the same, but assumed that they were owned by Brackin, and the contract was made with him as the owner. It was further shown that Brackin had taken charge of all the machinery at Cleora, Louisiana, under his written contract with Rogers, and had shipped the same to his warehouse and yards at Pine Bluff, and disposed of it at various times under their written contract; that he also took charge of all the machinery and steel rails at Reeder, Arkansas, under his oral contract with

Rogers, and disposed of them in the same way, accounting to Rogers for the proceeds from time to time.

Proceedings in bankruptcy were finally instituted against Brackin, and are now pending in the bankruptcy court.          •

There was a verdict and judgment for the defendants, and the plaintiff has appealed.

HART, J., (after stating the facts). Counsel for the plaintiff assigns as error the action of the court in giving instruction No. 1 at the request of the defendants. The instruction is as follows:

"1. You are instructed that although you should find from the testimony that L. B. Brackin was not in fact the agent of the plaintiff to sell the property sued for, yet, if you should further find from the evidence that the plaintiff permitted the said Brackin to hold possession of this property and other property of a similar character, and permitted him to hold and sell, from time to time, property of a similar character, and to hold same out for sale, to any one who should offer to purchase, and that the defendant purchased the property without knowledge of the contract between the plaintiff and Brackin, your verdict will be for the defendants."

(1-2)   The general rule is that no man can get a title to personal property from a person who himself has no title to it. There are, however, certain exceptions to the general rule. One of these exceptions is that a *bona fide* purchaser will be protected where the owner has conferred upon the seller the apparent right of property as owner or for disposal as his agent. *Jetton* v. *Tobey,* 62 Ark. 84. See, also, *Andrews* v. *Cox,* 42 Ark. 473, and case note to 25 L. R. A. (N. S.) 761 and 770. The question of whether Rogers, by his acts and conduct, so clothed Brackin with the indicia of ownership and the right to dispose of the rails that he was estopped from asserting his actual ownership against an innocent purchaser for value was submitted to the jury under proper instructions to which no objection has been urged by the plaintiff.

Counsel for the plaintiff insists, however, that instruction No. 1 went further than this, and in effect directed the jury to find for the defendants. In this contention we think counsel are correct. The instruction tells the jury that if Rogers permitted Brackin to hold possession of the steel rails and other property of a similar character, and permit him to hold and sell from time to time property of a similar character, that its verdict should be for the defendant. There was a conflict between the testimony of Rogers and of Brackin as to whether the former gave the latter the authority to take possession of and sell the steel rails in controversy. Rogers asserted that he did not give Brackin such authority, and Brackin on the other hand said that Rogers did give him such authority. It was proper that the jury should consider that during the same interval of time, Rogers did deliver to Brackin other property of a similar character to sell for him as tending to show that he gave such authority to Brackin as to the property in question; but it was wrong to instruct the jury that if Rogers permitted Brackin to hold property of similar character, and sell it for him, that its verdict should be for the defendants, for this would invade the province of the jury. The question was whether Brackin did possess such authority, and that question can not be determined alone by what authority was given him in other cases in regard to similar property. Rogers being the owner of the property, could at his own pleasure give such authority in one case, and withhold it in another.

Again, it is urged that the judgment should be reversed because the court improperly admitted evidence of the first contract between Rogers and Brackin as to the machinery and other property at Cleora, Louisiana. We do not agree with counsel in this contention. In the first place it may be said that Rogers himself first testified as to the Louisiana contract, and introduced it in evidence. In the second place it was competent for the defendants to introduce it as tending to show the course

of dealing between Rogers and Brackin, and thus to show the apparent authority of Brackin to dispose of the property in question.

For the error in giving instruction No. 1 at the request of the defendants, the judgment will be reversed and the cause remanded for a new trial.