GARNER MANUFACTURING COMPANY *v.* CORNELIUS LUMBER
COMPANY.

## Opinion delivered June 23, 1924.

1.  EVIDENCE—PAROL TESTIMONY TO EXPLAIN.—A written contract of
    sale reciting: "Terms cash 10—less 2 per cent.," is so ambiguous as to render admissible parol evidence to explain it.

2.  SALES—RIGHT TO ALTER WRITTEN CONTRACT.—Parties to a written
    contract may alter, rescind or abandon same by a subsequent
    verbal contract.

3.  SALES—DELIVERY OF BILL OF LADING.—Mere delivery to a buyer
    of a bill of lading which is nonnegotiable does not transfer the
    title unless such was the intention of the parties.

4.  SALES—EFFECT OF RESERVATION OF TITLE.—Where a chattel is
    sold with reservation of title until payment of the price, the
    title remains in the seller until payment, and a purchaser from
    the buyer acquired no title, though he buys in good faith for
    valuable consideration.

5.  SALES—INVOICE NOT EVIDENCE OF TITLE.—An invoice is not evidence of a sale, but is a mere detailed statement of the quantity
    and cost or price of things invoiced, and is as appropriate to a
    bailment as to a sale, and does not constitute a contract between
    the parties, though relevant in determining what the contract
    was.

Appeal from Pulaski Circuit Court, Second Division;
*Richard M. Mann,* Judge; reversed.

*Harry H. Meyers,* for appellant.

*Coleman, Robinson & House,* for appellee.

WOOD, J. On October 13, 1922, the Sargent Lumber
Company gave the following order: "To Garner Manufacturing Company, Marvell, Arkansas: Please furnish
us with the material itemized below. One carload dry 6/4
mixed oak lumber." The order gave the prices to be
paid for the various grades of lumber, and contained the
statement that the printed part of the order is made a
part of it, and that an inspector would be sent to load out
the lumber in about thirty days. The order also contained
the following statement: "Terms: Less 2 per cent. ten
days." It was signed "Sargent Lumber Company, by
T. S. Sargent," and was indorsed, "Accepted, Garner
Manufacturing Company, by F. R. Garner."

This action was brought January 2, 1923, by the Garner Manufacturing Company against the Missouri Pacific Railway Company and the Sargent Lumber Company (hereafter called Sargent Company) to recover the possession of a certain car of lumber, which is described in the complaint. The complaint set up the above order of the Sargent Company, and alleged that the Garner Company sold to the Sargent Company the car of lumber in controversy under the false promise made by the Sargent Company that the car would be paid for in cash, and that the car was delivered to the railroad company on the promise and agreement that title was to be retained in the Garner Company until the balance of the purchase money was paid; that the car was billed by the Garner Company to the Mutual Lumber Company, St. Paul, Minnesota, under the orders and authority of the Sargent Company, and a bill of lading was issued to the Sargent Company by the railroad company December 15, 1922, and the car was moved by the railroad company to Paragould, Arkansas, where same is now held. The complaint alleged that T. S. Sargent and the Sargent Company were insolvent; that demand had been made upon them for the balance due on the car and they had refused to pay, and therefore the Garner Company was entitled to the possession of the car, and to damages against the Sargent Company for its detention, etc.

The Cornelius Lumber Company intervened on January 24, 1923, and alleged that it bought of the Sargent Company, December 15, 1922, the car of lumber in controversy, and caused the same to be delivered to the railroad company, consigned to the Mutual Lumber Company at St. Paul, Minnesota, and received its bill of lading for said lumber to the Mutual Lumber Company, which was indorsed and delivered to the Cornelius Company by the Mutual Company on the 15th day of December, 1922. The Cornelius Company denied that the Garner Company retained title to the carload of lumber, but alleged that it sold the same without reservation to the Sargent Com-

pany, and that it purchased the same from the Sargent Company for cash, and that the lumber was delivered to it before the action in replevin was instituted. The Cornelius Company set up that it was damaged by the wrongful detention of the property by the Garner Company in the sum of $500. It prayed judgment in the sum of $1,300, the value of the lumber, and $500 damages for its alleged wrongful detention. The Garner Company answered the intervention, denying all of its allegations.

Frank Garner of the Garner Company testified and introduced the above-mentioned order in evidence. He also introduced the invoice of the lumber made by his company to the Sargent Company, which bore the indorsement ''Terms: Cash 10 less 2 per cent.,'' and recites that the lumber is billed to the Mutual Lumber Company, St. Paul, Minnesota, by the Sargent Company as shippers. Witness also introduced the original bill of lading, showing the car of lumber consigned to the Mutual Company at St. Paul, Minn., by the Mutual Lumber Company, and testified that he filled out the bill of lading, and signed the shipper's name to it and delivered the bill of lading to the agent of the Sargent Company. The bill of lading was indorsed on the back, ''Deliver to Cornelius Lumber Company, or order,'' signed Mutual Lumber Company, by T. S. Sargent, treasurer. Over the objection of the appellee, the witness testified as to what was meant by the words ''Cash 10—less 2 per cent.'' on the invoice, that is, if the purchaser paid for the car within ten days he got two per cent. off the invoice price, but if he paid after ten days he paid the full invoice price.

The witness was also permitted to testify, over the objection of the appellee, that he told Fisher, the agent who conducted the negotiations for the Sargent Company, at the time the bill of lading was made and the car loaded, to give him a check for the lumber, and Fisher replied that he had no checks with him—that it was after banking hours. Fisher told witness to put a draft in the bank,

and the Sargent Company would pay it. Witness said to Fisher: "I want you to understand we are not going to give you this lumber—we are not going to relinquish title until this lumber is paid for in full." Fisher replied, "That is all right—just put the draft in the bank, and it will be taken care of. We have the money in the bank to pay it." Upon the faith of this statement that the draft would be paid, it was made out and put in the bank, and at the same time the bill of lading was delivered to the Sargent Company. The draft was not paid, and this action in replevin was instituted. Sam Garner, over the objection of the appellee, testified to the same effect.

Sargent testified for the intervener substantially as follows: On December 9, 1922, the Sargent Company wrote the Cornelius Company in St. Louis offering to sell it this car of lumber. On December 11 the Cornelius Company replied, accepting the car. The Sargent Company then made out its invoice for the lumber and mailed it to the Cornelius Company. The Sargent Company sold the car in question to the Cornelius Lumber Company, as reflected by the letters and the invoice which were introduced in evidence. Witness testified that he was treasurer of the Mutual Lumber Company, and signed the indorsement on the back of the bill of lading. He had no connection with the Cornelius Company, and the Sargent Lumber Company received a check from them for $926.10. The invoice showed that the car was sold to the Cornelius Lumber Company for $1,127.02, terms 80 per cent., balance on arrival. The Sargent Company went into bankruptcy in January, 1923.

The cause, by consent, was submitted to the court sitting as a jury, and the above are substantially the facts upon which the court found, in part, as follows: "That the invoice of the Garner Company on its face showed that cash was not the condition of the transfer or delivery of this car. It was delivered f. o. b. Marvell. Evidently that car, according to this paper, was not a cash condition, because he at least had ten days to pay in

cash. They told Mr. Fisher if the money was not forth-coming there would be no sale, but that is in direct con-flict with their invoice showing the terms, that he had ten days to pay it in. I think Mr. Garner should have his money, but I do not see how I can give him his lumber under this state of facts. My holding will be that Garner Manufacturing Company parted with their lumber on terms, and not conditioned on cash, by their express invoice, and that it was a sale on these terms. They say 'cash ten days,' and it appears to the court that he had ten days to pay for it.''

The court thereupon entered a judgment in favor of the Cornelius Lumber Company, from which is this appeal.

The trial court found that the appellant parted with its lumber on terms, and not conditioned on cash, by their express invoice. This finding of the court was tanta-mount to excluding from its consideration the testimony of the Garners to the effect that the invoice, "Cash ten—less two per cent.," meant cash in hand to the Garner Company, and that such was the agreement and under-standing with the Sargent Company when the bill of lad-ing was made and the car loaded. On this point the Gar-ners testified that, when the car was loaded and the bill of lading was made, Frank Garner for the Garner Com-pany told Fisher, acting for the Sargent Company, that the Garner Company was not going to relinquish title to the lumber until it was paid for in full. To this Fisher replied, "That is all right—just put a draft in the bank and it will be taken care of. We have the money in bank to pay it." The Garner Company surrendered to the Sargent Company the bill of lading on that condition. On that condition the Garner Company forwarded the draft to the bank, and it was not paid. Thereupon the Garner Company brought this action in replevin.

The court erred in excluding this testimony from its consideration, and erred in holding that the above parol testimony was not admissible because in conflict with the

invoice showing that the Sargent Company had ten days in which to pay for the lumber. In other words, the court treated the invoice as the contract between the parties, and construed the invoice as meaning that the lumber was sold by the Garner Company on terms and not on condition that the title passed only upon the payment of cash. It thus appears that the court tried the cause without giving the appellant the benefit of its contention, which its testimony tends to prove, that title was reserved unless, and until, the cash was paid for the car of lumber. Even if the court were correct in treating the order and invoice as evidencing the only contract between the parties, yet there was sufficient ambiguity in the terms of the invoice, to-wit, "Cash ten—less two per cent.," to justify oral testimony as to the meaning of those terms. And the testimony of the Garners to the effect that the Garner Company reserved the title until the cash was paid, was not in conflict with, and did not tend to contradict or vary the terms of, the written contract, even if that contract meant that the Sargent Company was to receive two per cent. off if it paid cash in hand or cash in ten days. Therefore the excluded testimony was competent, even if the order and invoice evidenced the only contract between the parties. But we are further convinced that, even if the order and invoice evidenced the contract between the Garner and Sargent companies at the time the order was accepted and the invoice made to the Sargent Company, nevertheless the parties to the contract had the right to change the terms of the written contract afterwards by verbal agreement. They could alter, rescind or abandon it, and enter upon a new and oral contract. *Caldwell* v. *Dunn,* 156 Ark. 126, and cases there cited.

Therefore the court should have taken into consideration the testimony of the Garners tending to show that, at the time the bill of lading was surrendered by the Sargent Company to the Garner Company, it was with the understanding that the Garner Company did not

relinquish the title until the lumber was paid for in full. The Garner Company had a right to show, notwithstanding the delivery of the bill of lading to the Sargent Company, that it was not the intention of the parties at the time to pass the title to the latter company. *Gibson* v. *Inman Packet Co.*, 111 Ark. 524. See also *McGehee* v. *Yunker & Ronk*, 137 Ark. 400. If the court had not misapprehended the law as to the competency of the above testimony, it might have found from such testimony that the Garner Company did not part with its title to the car of lumber, and that such car was delivered to the carrier for the Sargent Company, and that the bill of lading was delivered to the Sargent Company on the condition that the title remain in the Garner Company until the draft was paid. It must not be overlooked that the bill of lading was nonnegotiable, and the mere delivery of the bill of lading to the Sargent Company did not operate to transfer the title to that company unless such was the intention of the parties at the time. If the title to the lumber was reserved in the Garner Company until the draft was paid, the court might have found, had it considered the above testimony, that the Sargent Company, by selling the lumber, could not pass any title to its vendee, although its vendee purchased without notice that the title was reserved in the Garner Company. It is well settled in this State that "when a chattel is sold with reservation of title in the vendor until the price is paid, the title remains in him until the condition is performed, and a purchaser from the vendee acquires no title, though he buys in good faith for a valuable consideration and without notice of the condition. *McIntosh & Beam* v. *Hill,* 47 Ark. 363, and cases there cited. *Starnes* v. *Boyd,* 101 Ark. 469-473. See also *Clinton* v. *Ross,* 108 Ark. 446."

The error of the court in not taking into consideration the testimony of the Garners, as above indicated, was highly prejudicial to the rights of the appellant, and for this error the judgment must be reversed. As a guide to the trial court, in view of a new trial, inasmuch as the

court seems to have treated the invoice as evidencing the contract between the parties, we deem it proper to say, in the language of the Supreme Court of the United States, that "an invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale; hence, standing alone, it is never regarded as an evidence of title." *Dows* v. *Natl. Exchange Bank,* 91 U. S. 618-630; *Sterns* v. *Baker,* 150 U. S. 321-328. To be sure, the invoice was relevant testimony to be considered in determining what the contract was between the parties, but it of itself did not constitute a contract.

For the error indicated the judgment is reversed, and the cause is remanded for a new trial.