DOBBINS v. MARTIN BUICK COMPANY.

4-9126                                      227 S. W. 2d 620

Opinion delivered March 13, 1950.

*Paul E. Talley, Max Howell* and *Wayne W. Owen,* for appellant.

*C. E. Yingling* and *C. E. Yingling, Jr.,* for appellee.

LEFLAR, J. The Martin Buick Company of Cookeville, Tenn., (hereinafter called Martin) brought this action of replevin to recover a Plymouth automobile to which it claimed title. Title was also claimed by defendant Dobbins. The Circuit Court, sitting without a jury, held for plaintiff Martin, and defendant appeals.

One Atkinson had on Feb. 5, 1948, purported to purchase the car from Martin at Martin's place of business in Tennessee, and had fraudulently given Martin a check on a non-existent account in a Georgia bank in payment for it. Atkinson at once took possession of the car, and Martin gave Atkinson an "invoice" identifying the car and stating the price, $1,825. Nothing in the invoice indicated that the price had been paid. No bill of sale was issued to Atkinson, it being Martin's purpose to execute a bill of sale only after the check had cleared.

The check was in due course turned down by the drawee bank, and Martin then began looking for the car. Atkinson had put Martin on the wrong trail by representing himself as a Georgia used car dealer. Actually,

he brought the car at once to Arkansas, and by mail secured on Feb. 9, 1948, an Arkansas state license and a "certificate of registration," commonly called a "pink slip," in his own name.[1] Shortly thereafter Atkinson sold the car to the Baker Automobile Co. (hereinafter called Baker), auto dealers at Searcy, Ark., who bought it in good faith and for value in reliance upon the invoice and the Arkansas "certificate of registration" bearing Atkinson's name. Baker in turn sold the car to defendant Dobbins, who was likewise an innocent purchaser. Later Martin located the car and brought this action to recover it. The facts as just recited are established by stipulation of the parties, and the defendant's appeal involves no dispute concerning them.

It cannot be denied that Martin retained title to the car after Atkinson's fraudulent acquisition of possession under color of purchase in Tennessee. The law of Tennessee, the *situs*, governs the effect of that purported sale upon title to the car. Restatement, Conflict of Laws, §§ 257, 260; *Ghio* v. *Byrne*, 59 Ark. 280, 27 S. W. 243. The law of Tennessee is that under the circumstances the title remains in the defrauded seller. Williams Tenn. Code, Ann. (1934), § 7211; *Young* v. *Harris-Cortner Co.*, 152 Tenn. 15, 268 S. W. 125, 54 A. L. R. 516; *Knoxville Tinware Co.* v. *Rogers*, 158 Tenn. 126, 11 S. W. 2d 874. To this conclusion the parties to this action have virtually agreed. It was Martin's car that Atkinson brought into Arkansas and here sold to Baker at Searcy.

Defendant's contention is that Martin is estopped to deny that Baker (and subsequently Dobbins) acquired good title to the car by the *bona fide* purchase from Atkinson. The theory underlying this contention is that Martin put it in the power of Atkinson to misrepresent himself as owner of the car by vesting Atkinson with such outward *indicia* of ownership as would mislead innocent persons like Baker and Dobbins into thinking that Atkinson owned the car and had full power to sell it. Cases such as *Seward* v. *Evrard*, (Mo. App.) 222 S. W. 2d

[1] This certificate was, of course, issued prior to the enactment of the present Arkansas Motor Vehicle Title Registration Law, Act 142 of 1949, appearing in Ark. Stats. (1949 Supp.) §§ 75-101 *et seq.*

509, are relied upon to support this theory. In *Seward* v. *Evrard,* a car was sold in Missouri by Seward to one Stokes, with title retained in the seller. Stokes secured an Arkansas license and certificate of registration on the car, in much the same fashion as did Atkinson in the present case, then took the car to St. Louis and sold it to a *bona fide* purchaser. Stokes had fraudulently given Seward an uncollectible draft in payment for the car, and Seward brought replevin. The holding of the Missouri court was that under Missouri law Seward was estopped to set up his title as against the innocent purchaser. And see *Crescent Chevrolet Co.* v. *Lewis,* 230 Iowa 1074, 300 N. W. 260. Cf. *Pool* v. *George,* 30 Tenn. App. 608, 209 S. W. 2d 55.

Whether such an estoppel is to be applied against Martin in the present case is to be determined by the law of Arkansas. This conclusion is compelled by two well-established principles in the law of Conflict of Laws.

One of these principles, previously mentioned herein, is that the effect of any given transaction upon title interests in a chattel is controlled by the law of the *situs* of the chattel at the time. Restatement, Conflict of Laws, §§ 255-259; *Motors Security Co.* v. *Duck,* 198 Ark. 647, 130 S. W. 2d 3. Here the auto was located in Arkansas at the time of the sale to an innocent purchaser which assertedly by process of estoppel took title out of Martin.

The other principle is that the legal effect of allegedly wrongful conduct is determined by the law of the place where harm occurs or loss is sustained as a result of the conduct complained of. Restatement, Conflict of Laws, § 377. This principle is most commonly applied in Torts cases, as in *Alabama G. S. R. Co.* v. *Carroll,* 97 Ala. 126, 11 So. 803, 18 L. R. A. 433, 38 A. S. R. 163 (negligence in Alabama caused injury in Mississippi; law of Mississippi governs); *Otey* v. *Midland V. R. Co.,* 108 Kans. 755, 197 Pac. 203 (sparks from engine in Kansas set fire to barn in Oklahoma; law of Oklahoma governs). It is illustrated by *Cameron* v. *Vandergriff,* 53 Ark. 381, 12 S. W. 1092, in which blasting in the Indian Territory caused a rock to fall on and injure the plaintiff in Arkan-

sas, the holding being that these facts gave rise to an actionable Arkansas tort.

This second principle is relevant here only if the asserted estoppel be deemed to sound in tort. "Estoppels *in pais* depend upon facts which are rarely in any two cases precisely the same. . . . A party who by his acts, declarations or admissions, or by failure to act or speak under circumstances where he should do so, either designedly, or with willful disregard of the interest of others, induces or misleads another to conduct or dealings which he would not have entered upon but for this misleading influence, will not be allowed, afterwards, to come in and assert his right, to the detriment of the person so misled. That would be a fraud. . . . Generally it is said that if the owner of property, with a full knowledge of the facts, stands by, and permits it to be sold to an innocent purchaser, without asserting his claim, he will be estopped. . . . The leading idea is that a person shall not do, or omit to do, anything regarding his rights, which if taken advantage of by him, would work a fraud upon another." EAKIN, J., in *Jowers* v. *Phelps,* 33 Ark. 465, 468, quoted in *Williams* v. *Davis,* 211 Ark. 725, 731, 202 S. W. 2d 205, 208. Also see Bigelow, Estoppel (6th Ed., 1913) 6. This does not mean that estoppel is a tort; rather (in its aspect here involved) estoppel is a rule of law which gives relief from harms caused by misrepresentation, Ewart on Estoppel, p. 12, and in that sense it sounds in tort.

That being true, it is proper to apply in estoppel cases the same Conflict of Laws principle that applies in tort cases. The governing law is that of the state in which harm occurs or loss is sustained as a result of the conduct complained of. In this case that is the law of Arkansas.

In *Forrest* v. *Benson,* 150 Ark. 89, 233 S. W. 916, a Texas car owner allowed one Greene to hold possession of his car for two years and to take out Texas car licenses in Greene's own name for these years. Greene brought the car to Arkansas and here sold it to a *bona fide* purchaser. We held that these facts created no basis

for an estoppel against the Texas owner; he was allowed to establish his ownership against the innocent Arkansas purchaser. For similar holdings, see *McIntosh & Beam v. Hill,* 47 Ark. 363, 1 S. W. 680; *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; *Rogers* v. *Scott,* 128 Ark. 600, 194 S. W. 689; *Meyer* v. *Equitable Credit Co.,* 174 Ark. 575, 297 S. W. 846; *Essex City Acceptance Corp.* v. *Pierce-Arrow Co.,* 288 Mass. 270, 192 N. E. 604, 95 A. L. R. 1314.

These decisions preclude a finding of estoppel·in the present case unless the invoice which Martin gave to Atkinson constituted a representation that Atkinson had title. In *Garner Mfg. Co.* v. *Cornelius Lbr. Co.,* 165 Ark. 119, 125, 262 S. W. 1011, 1014, we said: ''Inasmuch as the (trial) court seems to have treated the invoice as evidencing the contract between the parties, we deem it proper to say, in the language of the Supreme Court of the United States, that 'an invoice is not a bill of sale, nor is it evidence of a sale. It is a mere detailed statement of the nature, quantity and cost or price of the things invoiced, and it is as appropriate to a bailment as it is to a sale; hence, standing alone, it is never regarded as an evidence of title.' *Dows* v. *Nat'l Exchange Bank,* 91 U. S. 618-630, 23 L. Ed. 214; *Sturm* v. *Baker,* 150 U. S. 312-328, 14 S. Ct. 99, 37 L. Ed. 1093.'' Similar definitions of the term ''invoice,'' from other jurisdictions, are cited in 48 C. J. S. 764.

We conclude that under the law of Arkansas Martin did not vest Atkinson with such *indicia* of title to the car as to estop Martin from setting up his own valid title against an innocent purchaser of Atkinson's nonexistent title. The judgment of the Circuit Court is affirmed.