BRYANT *v.* KILPATRICK.

4-9410                                    237 S. W. 2d 465

Opinion delivered March 5, 1951.

Rehearing denied April 9, 1951.

*James M. Gardner* and *W. Leon Smith,* for appellant.

*Adams & Willemin,* for appellee.

GRIFFIN SMITH, Chief Justice. The Sloan Motor Company of Kennett, Mo., sold a used Chevrolet automobile to W. H. and Bob Bryant. The Bryants operate farms in Mississippi county, Arkansas, and reside there.

The Motor Company paid to John O. Hager, *alias* Robert W. Brooks, $1,400 for the car, receiving delivery at Kennett following a conversation with the seller who called by telephone from Greenway, in Clay county, Arkansas. Hager was a hot-check artist who in October, 1949, was operating in St. Louis. He responded to a newspaper advertisement through which Robert J. Kilpatrick offered to sell the Chevrolet for $1,800. After a short period of negotiation Kilpatrick accepted an offer of $1,695, but Hager represented to the seller that his name was Brooks. Payment was made the following day. When ''Brooks'' called at Kilpatrick's home during the late afternoon he presented what appeared to be a cashier's check on the St. Louis County National Bank of Clayton, Mo., for $1,700, receiving the car and five dollars.

Kilpatrick gave Brooks his Missouri certificate of title. The printed form intended for use in assigning was left blank and was not notarized. Hager, still claim-

ing to be Brooks, sold the car to the Motor Company and delivered the incomplete document. The cashier's check was a forgery. Upon apprehension Hager, admitting his correct name, was charged with larceny by fraud and entered a plea of guilty.

Kilpatrick carried with Consolidated Underwriters[1] a policy of insurance covering loss by theft, larceny by fraud, and risks not pertinent here. It was stipulated that idemnification was the actual cash value of the car. Following an investigation a settlement was agreed to whereby the insurance company paid Kilpatrick $1,595. Kilpatrick, in an action to replevy from the Bryants, alleged that the car was worth $1,800. Consolidated Underwriters intervened. The defendants' motion to transfer to equity because the intervener's claim rested on subrogation was overruled. Also overruled was a motion to dismiss as to Kilpatrick because he had been paid.

A jury was waived and the court found (a) that the value of the car when Kilpatrick delivered it to Hager was $1,695; (b) that the plaintiffs were entitled to judgment for that sum, and (c) the car at the time of trial was worth $1,350. The appeal questions the court's factual finding that the value was $1,695. It is also insisted that subrogation does not lie in favor of an insurance company when it has paid the loss and the controversy is between such company and an innocent purchaser.

Shortly after the car was purchased by Kilpatrick it was involved in a rear-end collision, but there was testimony that the damage had been repaired. However, Kilpatrick testified that while the automobile had apparently been restored to its original condition, neither he nor his wife was satisfied with it. The mere fact that it had been in a minor wreck gave Mrs. Kilpatrick a feeling of apprehension. On cross-examinaiton Kilpatrick intimated that the reduced value from his own standpoint might have been $300 or $400, yet when asked whether the written acknowledgment of payment by the insurer

[1] The insurer was a reciprocal insurance exchange owned by Henry Burr and other individuals who were named.

was an admission that the cash or market value had been received he replied, ''No: I accepted the amount paid me as not being the cash value—I didn't think I got . . . what the car was actually worth''. He had previously testified that the fair market value at the time *Brooks* procured it was $1,800. Another stipulation fixes the value at Kennett when *Brooks* sold to the motor company, but this stipulation is the agreement of counsel that if Wallace Sloan [of the Sloan Motor Company] should testify he would say that the value was $1,700 to $1,800.

Appellants urge that Sloan's evaluation had reference to the Kennett market, and this testimony would not be competent to show the true value in St. Louis. The car was new when Kilpatrick bought it late in August, 1949, but the price is not shown; nor is there any testimony regarding extra equipment. The insurance policy is not in the record, but the essentials are agreed to, including appellants' acquiescence in the right of subrogation under protest that enforcement of the right was an exclusive equitable remedy. The defendants requested a finding that Kilpatrick had no recoverable interest in the subject-matter and that Consolidated was the owner of the cause of action; but another requested direction was that *under the findings of the court* Kilpatrick alone could recover, and he could not have judgment for more than $100.

There was sufficient evidence to support the judgment that the *plaintiffs* were entitled to possession. Proof is lacking that Kilpatrick was paid in full for his loss—that is, his settlement with Consolidated did not absolve Hager, unless by the attempted purchase title passed. Inferentially a small settlement between Kilpatrick and the insurer will be made, but this is speculation and is worth nothing factually unless the court considered it from the standpoint of self-interest in determining credibility of the witness.

We are not persuaded that a difference between market value of the car in St. Louis and at Kennett would be implied as a matter of law, requiring the plaintiffs to make proof; but even so, there was substantial testimony

to sustain the court's finding when consideration is given the law's policy that credibility is to be determined by the trial court.

The paramount question is whether the defendants were innocent purchasers. Facts in some respects similar and involving analogous principles were before the court in two recent cases, *Pruitt Truck & Implement Co.* v. *Ferguson*, 216 Ark. 848, 227 S. W. 2d 944, and *Dobbins* v. *Martin Buick Co.*, 216 Ark. 861, 227 S. W. 2d 620. A distinction emphasized by appellants is that in the Ferguson case the certificate of title was not assigned to Craft until deferred payments had been met. In the Dobbins case the Martin Buick Company, domiciled at Cookeville, Tenn., delivered an automobile to Atkinson whose check was drawn on a non-existent account in Georgia. The seller gave Atkinson an invoice in which the car was identified. It showed the price to be $1,825, but there was no acknowledgment, and the decision turns on the point that the invoice executed by Martin was not a bill of sale and the certificate of registration procured in Arkansas did not invest Baker (or Dobbins to whom Baker sold the car) with title attributes of sufficient value to support the sale Baker made to Dobbins. It was contended that Martin was estopped to deny Dobbin's title. However, the opinion expressly states that estoppel would be determined by the law of Arkansas where the property was found, while in the Pruitt-Ferguson case it was said that the validity of foreign-created titles in chattels brought here is to be determined by the laws relating to contracts and certificates of title in the state where made or issued.

As has been said of the original transactions, Kilpatrick did not legally acknowledge the transfer, though no doubt he would have done so had a notary been conveniently available. But the Supreme Court of Missouri has determined the issue against appellants' contentions. The holding in *Peper* v. *American Exchange Natl. Bank in St. Louis*, 210 S. W. 2d 41, is that the statute dealing with the sale of a used automobile is broad enough to authorize the Commissioner of Motor Vehicles to require

the valid holder of a certificate of title not only to indorse thereon [the name of the person to whom the transfer is made], but to require an acknowledgment as part of the assignment. Mo. R. S. A., § 8382. In the case just cited the Missouri Court said: "Defendant bank can not be [an innocent mortgagee] because it had the . . . certificate in its possession and knew that the assignment was not acknowledged." Other Missouri cases are to the same effect.

We conclude, therefore, (a) that when Kilpatrick filed his suit Consolidated had the right to intervene; (b) that there was substantial evidence of valuation; (c) that under the Missouri decisions appellants were not innocent purchasers, and (d) the judgment was free from other objections urged in avoidance.

Affirmed.