## HUBACEK v. MANUFACTURERS CAS. INS. CO.

No. 3001.

Court of Civil Appeals of Texas. Waco.

Feb. 21, 1952.

Rehearing Denied March 20, 1952.

Geo. C. Cochran, John Touchstone, Dallas, for appellant.

Biggers, Baker & Lloyd, Dallas, for appellee.

TIREY, Justice.

Appellant brought this suit against appellee, a corporation, who was the surety of Edgar Earl Deere, Sheriff of Hot Springs County, Arkansas, to recover the value of a Ford automobile which plaintiff alleged such sheriff had delivered to Roy Bridges without the consent or knowledge of plaintiff, which action of the sheriff amounted to an unlawful conversion and he sought damages for the value of the car (alleged value $1,500) and attorney's fees (alleged $750) amounting to the sum of $2,250. Neither the sheriff nor Bridges was made a party. The cause was tried without the aid of a jury and the court overruled plea in abatement of defendant Manufacturers

Casualty Insurance Company for failure to make Deere a party, to which an exception was taken but no complaint is made in the brief. The court found that plaintiff was not entitled to recover and entered a take nothing judgment. Plaintiff duly excepted to the judgment of the court and gave notice of appeal to the Dallas Court of Civil Appeals and the cause was transferred to this court.

At the request of plaintiff's attorney the trial court prepared and filed the following findings of fact and conclusions of law:

"Findings of Fact

"(1) Plaintiff, Frank A. Hubacek, transferred all of his right, title and interest in the automobile in question to Roy Bridges.

"(2) That the bill of sale in question was executed by Frank A. Hubacek of his own free will and accord, and without duress, and for a valuable consideration to Roy Bridges.

"(3) That the plaintiff herein, Frank A. Hubacek, did not own any right, title or interest in the automobile at the time the automobile was delivered to Roy Bridges.

"(4) That the plaintiff, Frank A. Hubacek, was the owner of the automobile in question, being the 1940 Model Tudor Ford, Motor No. 99A0126456, Florida License 4D–66048, and in possession of said automobile on or about the 15th day of December, 1947, and that on or about the 15th day of December, 1947, the plaintiff, Frank A. Hubacek, executed a certain bill of sale, conveying all of his right, title and interest to Roy Bridges, in the automobile above described. That thereafter, particularly on the 17th day of December, 1947, the plaintiff was not the owner of the automobile alleged to have been converted by Ed Deere, Sheriff, Hot Springs County, Arkansas, and that the Plaintiff, Frank A. Hubacek, had no interest in the automobile hereinabove described, and that the automobile was returned by the Sheriff, Ed Deere, to Roy Bridges, who was the owner of the right, title and interest to the automobile, and owned the legal, beneficial and equitable title.

"(5) That the plaintiff by his own acts caused any loss damage that may have oc-

curred to him, and that is alleged in plaintiff's petition.

"(6) That on or about the 24th day of December, 1947, Roy Bridges executed a cross-bond for possession of the automobile involved herein, being a 1940 Tudor Ford, Florida License No. 4-D66048, Motor No. 99A0126456, and that Roy Bridges did file such cross-bond to obtain possession of the automobile, and that such automobile was returned to the possession of the said Roy Bridges.

"(7) That at the time of settlement, Mr. Glover, attorney for Dr. Peters, gave to Mr. Touchstone, attorney for plaintiff, the right of subrogation to bring suit on the cross-bond.

"(8) That at the time of settlement of the case of Dr. C. F. Peters against Frank A. Hubacek, it was agreed that only two automobiles in storage at 555, Malvern, Arkansas, be. released to Hubacek, and no provision was made for a turning over of the automobile sued on herein, and judgment entered at such time by the United States District Judge provides that the attachment heretofore issued is dissolved, and the Marshal directed to release to the defendant (being Hubacek) the two automobiles in storage at 555, Malvern, Arkansas, and that the two automobiles were the two wrecked automobiles.

\* \* \* \* \* \*

"Conclusions of Law

"(1) That as a matter of law the bill of sale from Frank A. Hubacek to Roy Bridges conveyed the legal and equitable title, and also the beneficial interest and title in said automobile, to Roy Bridges.

"(2) That as a matter of law the plaintiff did not own the automobile in question at the time of the alleged conversion, and no conversion as a matter of law could have occurred, and as a matter of law the plaintiff was not damaged.

"(3) That all of the elements of estoppel are present here, and that the plaintiff having by his own acts executed a bill of sale transferring the title to Roy Bridges, is estopped to make any claim against the defendant or sheriff, Ed Deere.

"(4) That as a matter of law no conversion occurred because plaintiff did not own the automobile.

"(5) That as a matter of law Hubacek was not bound by the terms of the Arkansas Statutes relative to the transferring of title, it being undisputed that Hubacek was not a resident of Arkansas, and further such Statutes would be ineffective to prevent the transferring of the equitable and beneficial title to said automobile to Roy Bridges.

"(6) There being no evidence of duress upon Frank A. Hubacek in connection with the execution of the bill of sale to Roy Bridges, the court holds that as a matter of law there is no duress on Frank Hubacek in connection with the execution of the bill of sale to Roy Bridges."

A statement is necessary. Plaintiff was a secondhand car dealer residing at Ennis, Texas. In December, 1947 he made a trip to Cincinnati for the purpose of buying cars for resale and while there bought seven cars and he and his drivers were bringing them back to Texas through Arkansas and on the highway near Malvern, Arkansas, one of the drivers was in collision with a car operated by Dr. Peters of Malvern, which resulted in Dr. Peters being severely injured, and as a result the plaintiff and his drivers and the cars were taken in charge by the officers and brought back to Malvern. Appellant testified to the effect that on the day of the accident and after the return to Malvern the sheriff said to him, "Give me the keys or I will have to lock you boys up tonight, but if you surrender the keys to me, I will meet you here at 9:00 o'clock and give you the keys, so instead of going to jail we picked the easier way and we gave him the keys to all of the vehicles that we had." He further testified: "The next morning when we went to meet the sheriff at 9:00 o'clock he wasn't there but instead was a man by the name of Bridges \* \* \* and he approaches me right in the sheriff's room and said, 'Are you the boys that had the wreck?' and I said, 'Yes, sir.' And he said, 'You are the very ones I want to see.' He said, 'I want to buy every car that you have.

I am a dealer here and I need your cars. You won't be able to get them, the sheriff is going to attach every one of them, and therefore, I can buy them and give you the money for them.' * * * I said, 'No, I will not sell my cars because you won't give me what I can get for them at home and, furthermore, I don't know who you are.' * * * That brought on other words and he still demanded me selling the cars or giving him possession of them and I told him, 'No, sir, I will not. I will go to an attorney and talk to him before I do anything' but the cars are not for sale, not here.' And he said, 'Well, if you know what is cooking, the sheriff and the attorney have gone to Hot Springs * * * and they are making bond to attach every car that you have.' And I said, 'Well, I don't believe that', 'the sheriff is supposed to meet us here at 9:00 and we are going to settle with him,' and he said, 'No, they have already gone, I will prove it to you,' and said, 'Let's go to an attorney' and so we went to an attorney right across the street from the courthouse and he was busy, he wasn't there, and so he took us to a fellow named Danuser, another attorney, and when we got there Bridges said, 'For $200.00 we will tell you how to get these automobiles away from here before the sheriff files a writ of attachment. He has to file a suit first and raise a bond' and said, 'between now and 2:00 o'clock you can get every car away from here for $200.00,' and so I bargained with them for a while and got them down to $150.00 and I said, 'How will we get the cars out of here?' and Bridges said, 'I will wire the automobiles or get a man to wire them for you and we will get them away from here' and so I agreed to the sum of $150.00 and paid them in cash and Bridges and I went to the DeSoto dealer there to get a mechanic to wire these automobiles and when the mechanic found out the sheriff's office had the cars around the court. he refused to wire them, and Bridges said, 'I will wire them and you help me.' "

At that time Hubacek had not been served with any papers nor had the writ of attachment been levied. "I gave them the $150.00 and we went to wire these cars, and we wired one after one. Of course, we didn't have to wire but the front car because we towed the other one, and so every time we would wire one I told my drivers to take off and finally on the last I had three of them gone and so I had one hookup for myself and two wrecked cars that were in the wreck house there and a little 1940 model Ford, that was my personal car that I drove back and forth, and so when we got to those I told the man, 'The Chevrolet is not wrecked bad, I want you to wire it for me and I am going to take it away,' and he said 'Okay' and he started wiring the car and the telephone rang just about the time he started on it and he come back and he said, 'I can't wire your automobile, that was the sheriff's office calling, they don't want me to wire your automobile, told me to leave it alone.' * * * and I said, 'How about the little 1940 Ford?' and Bridges said, 'I tell you what to do to that, you give me a bill of sale and I will take care of that one for you, I got these others out for you, I will take that one to the house, I will either deliver it to you or you can pick it up after things cool off, pick it up yourself,' but he said, 'I will not let the sheriff have that car, because he is going to attach all of them as quick as he gets back.' " Appellant testified that Bridges did not pay him any money for the Ford car; that he signed a blank bill of sale and when he signed the blank bill of sale and Bridges had it in his pocket Bridges said, "that will keep the sheriff off of you, I will save it for you." He further testified that he did not intend to transfer any title whatsoever to Bridges. He further testified:

"Q. All right, now, you made this deal with Bridges and you turned the autmoble over to him? A. That is right.

"Q. And you gave him a bill of sale? A. That is right. * * *

"Q. Who was your attorney during these proceedings up here, Mr. Danuser, is that the attorney you were talking about? A. That is the attorney, yes."

Appellant further testified to the effect that he signed the bill of sale in the DeSoto place when they went there to look for a

mechanic to wire the car; that no one was there but him and Bridges when he signed the bill of sale on the back door of the building; that Bridges was not going to sell the car; that he was going to hold it until he could come back and get it or Bridges could deliver it to him in Texarkana; that Bridges did not do what he promised to do; that he never did go up to Arkansas and file suit against Bridges; that he did not tell the sheriff about this bill of sale.

The witness McCreary, deputy sheriff, testified to the effect that he served the papers and levied the attachment and that when he met Hubacek he told him that he was tieing up the Ford and Hubacek told him that he had sold it; that he had sold it to Roy Bridges; that when he levied the attachment on the Ford car Roy Bridges showed him bill of sale that he had to the car; that later Roy Bridges filed a cross bond for the Ford and that he accepted it and turned the keys over to Bridges.

W. H. Glover, attorney for Dr. Peters, testified to the effect that after talking in detail with Hubacek about the accident and his cars that he told him that unless he would agree to leave the automobiles that were paid for that he would attach all of his cars that day, which was Sunday; that thereafter he filed the suit in the Circuit Court of Hot Springs, Arkansas in behalf of Dr. Peters against Hubacek, which case was later removed to the Federal Court for the Western District at Hot Springs, in which suit he sought to recover $10,000 damages for personal injuries and $2,500 damage to Dr. Peters' automobile; that he caused writ of attachment to issue and be placed in the hands of Sheriff Deere at Malvern. This writ shows that it was levied on one 1940 Model Tudor Ford car, the car in suit, and one 1937 Chevrolet two-door car, and one wrecked Plymouth coupe. Thereafter, on December 3, 1948, Dr. Peters and Hubacek settled their suit and under the terms Hubacek paid $1,500 and costs of suit, which decree further provided: "It is further ordered that the attachment heretofore issued herein is hereby dissolved and the Marshal is directed to release to the defendant the two automobiles now in storage at 555, Malvern, Arkansas." There was tendered in evidence bill of sale from Frank Hubacek to Roy Bridges. The pertinent part of this instrument provides: "That I/We Frank Hubacek for and in consideration of the sum of One Dollar and other good and valuable cash in hand to me paid, the receipt of which is hereby acknowledged from Roy Bridges do hereby grant, bargain, sell, transfer and deliver unto the said Roy Bridges one 1940 Ford Automobile License Florida Serial 4016045 Motor No. 126456 to have and to hold now and forever unto the said Roy Bridges. And do hereby covenant that I/We have a right to make this conveyance hereinbefore described to be clear from all encumbrances."

Evidence was tendered to the effect that this bill of sale was placed in the hands of Roy Bridges and that he exhibited it to the officer who levied writ of attachment on the car and thereafter Roy Bridges filed a cross-bond and replevied the car. This bond provides: "We undertake and are bound to C. F. Peters, plaintiff, in the sum of $2500.00 that he will have the property attached in this action, viz, 1940 2 door Ford, Fla. License 4D-16048, Motor number 126456, or its value, to-wit: $2500.00, if he be entitled to an attachment against said property, subject to the orders of this court for the satisfaction of the judgment rendered in this case."

Since appellant grounded his cause of action against the surety company on the theory that Sheriff Deere had wrongfully converted the car in question, the sole controlling question here is whether or not he was guilty of wrongful conversion under the testimony tendered. In this light we have examined all of the testimony and it is our view that he was not.

We are in accord with the court's finding of fact No. 2 to the extent that the bill of sale in question was executed by Frank A. Hubacek of his own free will and accord and without duress. (We are not in accord with the last clause of the finding wherein he said, "for a valuable consideration to Roy Bridges" and this part of the finding is hereby set aside and held for

naught for reasons that we will hereinafter state briefly.) It is true that Hubacek was placed in jail for a little while on Sunday afternoon and was released without any bond or any charge being filed against him, and the evidence is without dispute that he was under no restraint or threats of personal violence and was at liberty at the time of his transaction with Bridges; that he sought the advice of an attorney before he agreed to pay Bridges the $150 to help him get the cars out of Arkansas; and that after Hubacek advised with his attorney Danuser he gave bill of sale to the car to Bridges and delivered possession to him. Danuser remained as counsel for Hubacek until Dr. Peters' suit against him was settled. There is no evidence that Deere had any knowledge that Hubacek's transactions with Bridges were not made in good faith, a question we do not pass upon, nor that Deere's conduct caused Hubacek to execute the bill of sale and give possession of the car to Bridges. In fact, we think all of the evidence precludes such view. It is true that Bridges told Hubacek that Dr. Peters was filing suit against him and that writ of attachment would be issued and levied against his cars, but in our state a threat to resort to civil proceedings which the law gives to a party for the enforcement of his right is not duress, and besides this threat came from Bridges, who, under all the evidence, was acting for himself only and adversely to the interest of Dr. Peters. See opinion of this court in Cleburne State Bank v. Ezell, Tex.Civ.App., 78 S.W.2d 297, point 6, at page 299, and authorities there collated; also Tex.Dig.Vol. 9, Contracts, ☞95(4). Evidence was tendered to the effect that Hubacek and Bridges both told the deputy sheriff who served the writ that the car belonged to Bridges but the officer followed the instructions of the court and levied the writ on the car in Bridges' possession. Since the sheriff had notice from both Hubacek and Bridges that the car belonged to Bridges, and since Bridges had filed a cross bond in the cause to replevy the car, absent notice from Hubacek to the sheriff to the contrary, when the court dissolved the writ of attachment it was Deere's duty to deliver the car to Bridges.

 It is our view that every element of estoppel in favor of Deere is present here. "'The purpose of estoppels is to prevent inconsistency and fraud resulting in injustice. * * * Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny.'" See Kuehne v. Denson, 148 Tex, 54, 219 S.W.2d 1006, 1009, point 3. See also Dobbins v. Martin-Buick Co., 216 Ark. 861, 227 S.W.2d 620 and cases cited under Texas Digest, Vol. 15, Estoppel, ☞52; Shear Co. v. Wilson, Tex. Com.App., 294 S.W. 843, point 2.

The evidence of estoppel is so clear against Hubacek that further comment seems unnecessary. Since Hubacek was present in the Federal Court when Dr. Peters' suit against him was settled, it seems passing strange to us that he made no demand of Sheriff Deere or the Marshal of the Federal Court for the return of the car which he claimed he had voluntarily placed in the possession of Bridges. The only explanation we find for his conduct in this respect is Hubacek's testimony to the effect that he was looking to Bridges to deliver this car to him. We have previously quoted this testimony. If Hubacek had intended to hold Sheriff Deere responsible for the car that he placed in the possession of Roy Bridges, it was his duty to so advise the sheriff when the suit was settled and the writ of attachment dissolved. We are therefore in accord with the court's third conclusion of law to the effect that all of the elements of estoppel are present here.

Our Supreme Court in Cavanaugh v. Davis, Tex.Sup., 235 S.W.2d 972, 977, recently announced: "The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to

sustain the trial court's findings." See also Woodward v. Ortiz, Tex.Sup., 237 S.W.2d 286 and cases collated under Tex.Dig.Vol. 4, Appeal and Error, ☞1010(1). For the reasons stated the judgment of the trial court to the effect that plaintiff take nothing against the Manufacturers Casualty Insurance Company, surety for Ed Deere, must be sustained.

■ We come now to discuss briefly the trial court's findings of fact and conclusions of law as to the title of the car in suit. We do not believe the trial court had jurisdiction of this particular question. First of all, the evidence was without dispute that Hubacek had the car in his possession and that he surrendered the possession of the car to Roy Bridges and gave him what purported to be a bill of sale to the car. Under the undisputed record in this cause, when the Peters case was settled the title and possessory right to the Ford car passed out of the Peters case and the question of title and possession was solely between Hubacek and Bridges. Since Bridges is not a party here, it is our view that the equities in the case demand that the trial court's findings of fact and conclusions of law in the following respects be set aside and held for naught, namely: (1) that Hubacek transferred all of his title and interest to the car to Roy Bridges; (2) that Hubacek did not own any title to the automobile at the time it was delivered to Roy Bridges; (3) that the bill of sale from Hubacek to Bridges conveyed the legal and equitable title and beneficial interest to Bridges; and (4) that as a matter of law Hubacek did not own the automobile at the time of the alleged conversion.

■ The judgment entered by the trial court insofar as it may, by implication or any construction placed thereon, attempt to adjudicate the title to the automobile is hereby reversed and rendered without prejudice to Hubacek's right to prosecute such claim or suit as he may choose against Bridges. The costs of this appeal are taxed against the appellant under the authority of Rule 448, Texas Rules of Civil Procedure, and authorities cited in Lone Star Gas Co. v. Childress, Tex.Civ.App., 187 S.W.2d 936.

Appellant has set up ten points in his brief. His contentions to the extent that duress was shown are overruled and his position that estoppel was not shown is overruled. The other points in his brief attacking the court's findings of fact and conclusions of law as to the transfer of title of the car by Hubacek to Bridges are sustained to the extent set out in the opinion; otherwise all of the ten points set out in appellant's brief are overruled.

Accordingly, the judgment of the trial court in favor of Manufacturers Casualty Insurance Company is in all things affirmed. The judgment of the trial court in all other respects is reversed and rendered.

Affirmed in part; reversed and rendered in part.

LESTER, C. J., took no part in the consideration and disposition of this case.