KINCHEN v. AUSTIN et al.     (No. 8235.)

(Court of Civil Appeals of Texas. Ft. Worth. July 3, 1915.)

CONTRACTS 94 — ASSIGNMENT—RESCISSION —FRAUD.

Defendant by assignment acquired a contract for the sale of land for $3,500 payable in installments, which further provided that when one-fourth of such amount should be paid the vendor would execute a warranty deed to the premises, conveying them clear of all liens and incumbrances. Defendant sold such contract to plaintiff, informing him that the last provision in the contract would control and that upon payment of one-fourth of the sum mentioned the vendor would convey the land clear of all liens and incumbrances. He, however, did not tell plaintiff that there were any other conditions or understandings except what was in the written contract, and though he was an attorney he did not, in giving his opinion as to the effect of the contract, act or pretend to act as plaintiff's attorney, but did advise him to consult other attorneys, which plaintiff did. Held, that plaintiff was not entitled to rescind his contract with defendant, as defendant's statement was but the expression of an opinion on a question of law, and moreover plaintiff did not rely on such opinion.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 420–430, 1160, 1164, 1165; Dec. Dig. 94.]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by S. E. Austin against C. R. Kinchen and J. R. Blakney. Judgment for plaintiff, against defendant Kinchen 'and he appeals. Reversed and rendered.

Poulter & Johnson, of Ft. Worth, for appellant. Mays & Mays and Lattimore, Cummings, Doyle & Bouldin, all of Ft. Worth, for appellees.

DUNKLIN, J. J. R. Blakney and L. R. Whitley executed a contract in writing by the terms of which the former agreed to sell, and the latter agreed to buy, a certain lot in the city of Ft. Worth. Whitley assigned his interest in the contract to A. G. Baldwin, who in turn assigned his interest in it to C. R. Kinchen, and Kinchen assigned all his interest in the contract to S. E. Austin.

The original contract, together with said assignments, is as follows:

"The State of Texas, County of Tarrant.

"Know all men by these presents:

"That I, J. R. Blakney, have this day bargained sold and conveyed to L. R. Whitley the following lot or parcel of land, to wit; Lot 31,

in block 5, Goldsmith's subdivision of the W. P. Patillo's addition to Ft. Worth, Tarrant county, Texas.

"The said Whitley agrees to pay for said lot and premises the sum of $3,250.00 with interest thereon at the rate of 8 per cent. per annum from date until paid, said payment to be made upon the following terms: The said Whitley agrees to pay to the said Blakney the sum of $20.00 per month, said payment to be made on the first of each month, beginning with the first day of October, 1913.

"The said Blakney agrees with the said Whitley that whenever there shall be paid as much as one-fourth of the principal, to wit, $3,250.00, that he will then and there, at the request of the said Whitley, execute a general warranty deed to said premises conveying the same to the said Whitley or to whomsoever he should direct, clear of all liens and incumbrances.

"Should the said Whitley fail to make his monthly payments, as above agreed, he agrees to deliver up said premises, and this contract shall become void.

"October 1, 1913.

                         "[Signed]    John R. Blakney.
                                      "L. H. Whitley."

(On back indorsed as follows:)

"I hereby assign and convey to A. G. Baldwin all my right, title and interest in and to the foregoing contract. I am to remain in possession of the premises until March 1st, 1914, payments to be made to J. R. Sandige at the Westbrook Hotel, Ft. Worth, Texas.

                                      "L. H. Whitley.

"State of Texas, County of Tarrant.

"Before me, C. B. Ambrose, a notary public in and for Tarrant county, Texas, on this day personally appeared L. H. Whitley, known to me to be the person whose name is subscribed to the foregoing instrument and assignment thereof and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

"Given under my hand and seal of office this 5th day of February, A. D. 1914. [L. S.] C. B. Ambrose, Notary Public, Tarrant County, Texas.

"For and in consideration of the sum of $1,-000.00. I hereby assign, transfer and convey all my right, title and interest in and to the within and foregoing contract and the property therein described unto C. R. Kinchen. Witness my hand at Ft. Worth, Texas, this 17th day of February, 1914. A. G. Baldwin. Witnesses: R. N. Dean.

"For and in consideration of $1,050.00 I hereby assign, transfer and convey to S. E. Austin, all my right, title and interest in and to the within and foregoing contract and the property therein described. Witness my hand at Ft. Worth, Texas, this the 15th day of May, 1914. C. R. Kinchen. Witness: W. E. Niel."

S. E. Austin instituted this suit against C. R. Kinchen and J. R. Blakney, alleging that under and by virtue of said contract Blakney contracted and became obligated to execute to plaintiff a warranty deed to the property described, free of all liens and incumbrances whenever as much as one-fourth of the purchase price of $3,250, or $812.50, had been paid to him, Blakney; that $240.50 had been paid to Blakney on said contract, leaving a balance of $572 of said $812.50, which balance, less the sum of $300, the amount of delinquent taxes due on the property, plaintiff had tendered to Blakney in connection with a demand for a deed from Blakney to said property free of all liens or

incumbrances thereon, and that said tender and demand had been refused. In his pleadings, plaintiff made the same tender upon the same conditions, and prayed for judgment against Blakney for title to the property free of any lien for the balance of the purchase price which Whitley agreed to pay for the property. Plaintiff further alleged that, in consideration for the assignment of the contract to him, he paid to Kinchen the sum of $250, and conveyed to him another lot in Ft. Worth, known as lot 16, in block 83, on Lincoln avenue. According to further allegations in his petition, plaintiff was induced to make such purchase by certain false and fraudulent representations made to him by Kinchen which were pleaded as follows:

"That as soon as said plaintiff herein shall have paid under said contract the sum of one-fourth (¼) of the said thirty-two hundred and fifty ($3,250.00) dollars, that the said J. R. Blakney would make, execute and deliver to this plaintiff a general warranty deed to said property free of any and all liens and incumbrances and that all this plaintiff would have to pay for said property would be the said sum of eight hundred twelve and 50/100 ($812.50) dollars to the owner of said contract, to wit, J. R. Blakney, and that said sum of two hundred and fifty ($250.00) dollars so paid by him together with the sum of eight hundred twelve and 50/100 ($812.50) dollars to be paid to the other party to said contract was all that said plaintiff herein would have to pay for said property."

Plaintiff's prayer for judgment was as follows:

"That he have judgment against all of the defendants forever quieting his title to the property in controversy upon payment of the said one-fourth of the $3,200.00 to the said J. R. Blakney; or in case the court should hold that such was not the meaning of the contract between the parties originally, to wit, L. H. Whitley and J. R. Blakney, and that there was fraud, accident or mistake in the statement of the matter to this plaintiff, by the defendant C. R. Kinchen as above alleged, then he prays that the deed made by him to the lot 16 in block 83, of North Ft. Worth, Tarrant county, Texas, situated on Lincoln avenue, be canceled, set aside and for naught held, and that the legal and equitable title to same be declared to be in this plaintiff, and all cloud upon plaintiff's title by reason thereof be removed, that he have judgment against all of said defendants for the sum of money so paid to the said Kinchen. * * *"

In the same connection plaintiff tendered back to Kinchen the contract in suit and further offered to do such equity as the court might require as a predicate for the relief sought.

A trial of the case resulted in a judgment in favor of plaintiff Austin against Kinchen for a rescission of the trade between them, but denying plaintiff any recovery against defendant Blakney; and Kinchen has appealed.

Defendant Kinchen requested a peremptory instruction in his favor which was refused. He then requested the submission of 16 special issues, which were by the court given. The court also submitted to the jury 18 special issues and a general charge all requested by plaintiff, the general charge following the special issues, and reading:

"In addition to the above findings, will you please find a general verdict for either the plaintiff, or defendant. If your verdict is for the plaintiff, the form of your verdict will be, 'We, the jury, find for the plaintiff.' If your verdict be for the defendant, the form of your verdict will be, 'We, the jury, find for the defendant.'"

The jury made findings on the entire 34 special issues, and also found a general verdict in favor of plaintiff. The record fails to indicate whether the judgment was predicated upon the general verdict, or upon the findings upon special issues. It is likely, however, that it was based upon the special findings, since it from a general verdict in favor of plaintiff it could not be determined whether the jury sustained the first count in plaintiff's petition against Blakney for the recovery of the land free of incumbrance upon payment to him of $572, or the second count against Kinchen alone for a rescission of the trade with him. Nor has appellant presented any assignment to the general instruction which gave the jury no legal guide for a determination of the respective rights of the parties but made the jury the exclusive judges of the law, as well as of the facts.

But appellant has assigned error to the action of the court in refusing his request for a peremptory instruction in his favor. We seriously question the sufficiency of the petition to support the judgment for rescission, a question raised by another assignment presented by appellant; but a determination of that question is unnecessary in view of the fact that the testimony of plaintiff himself upon that issue negatives any right to that relief. Plaintiff testified as follows, and no other testimony was introduced having a contrary meaning:

"Mr. Kinchen told me that when as much as one-fourth of the principal sum was paid Blakney would execute a general warranty deed to said premises and convey the same to Whitley, or to whom he should direct, clear of all liens and incumbrances, and that the bottom clause would control the top, and there was no doubt the deed would have to be made according to that clause. Said he would defend it, being a lawyer, and get the deed for me, when I completed that one-fourth of the payments."

He further testified that before making the trade with Kinchen he first inspected the property in controversy, and then went to Kinchen's office and had a talk with him, and in that conversation Kinchen—

"told me that he had no deed to the property, but that he had this contract and could get a deed on it. Q. He did tell you he did not have any deed to this property? A. He certainly did. He said he had this contract and showed it to me. I knew the contract was made to Whitley by Blakney. I took the contract and read it. I knew from the contract that when Blakney sold the property to Mr. Whitley the contract called for $3,250. I knew the contract read for $3,250, and I knew there had only been a few payments on the contract, it was plain to see from the back of it. * * * Of course I intended to buy the contract from Mr. Kinchen

when I took it. Mr. Kinchen did not tell me that there was anything else pertaining to the contract except just what was written in it. He did not say there were any other conditions or understandings between Mr. Blakney and Mr. Whitley, except what was written in the contract, but in his opinion the bottom clause would control the top, but said he was in the dark on it, that it was not real clear, but he believed it. He said it was a written contract between the two men. He did not tell me anything outside of the contract. He did not try to withhold the contract from me, but he read it to me and then gave it to me and told me to take it to my own lawyer and let them read it; that he was in the dark and he could not say; it was a little bit mixed up and might mean one thing and might mean another. But he told me positively that he could get me a deed when I paid one-fourth, and independent of that I did take it to other lawyers. He did not go with me, nor suggest what lawyer for me to go to. He told me to go to some lawyer of my own choice, and I went to two different firms. * * * Mr. Kinchen went with me to see my property, and he said he would turn over the contract for my place and $100, and he told me to take the contract to some lawyer of my own choice and have it passed on, and not take his word for it, and insisted that I take it to some other lawyer and have it construed, and I went to see Charles Mays first, of the firm of Mays & Mays. They are lawyers, and after that I went to see Judge McLain, of the firm of McLain, Scott, McLain & Bradley, and Judge McLain looked the contract over and said no one could lose except Mr. Blakney, the one who first sold the property. He made that statement to Walter Scott and then gave me his opinion that way. * * * I talked with Charley Mays and had him to go with me down to see Mr. Kinchen before we closed the deal. Q. What was your purpose in seeing Mr. Mays before you closed the deal? A. As to the value of this contract? Q. You went to get his opinion on the contract, didn't you? A. I certainly did. Q. You were taking his opinion upon the very matters Mr. Kinchen had talked to you about? A. I don't remember all of it; I put it up to him—just submitted the contract to him for his examination. Q. Mr. Austin, why did you go to other lawyers? A. Because I wanted a lawyer's opinion on that contract. Q. Well, Mr. Kinchen was a lawyer, wasn't he? A. Yes, but I wanted some other lawyer's opinion besides Mr. Kinchen's. Q. And with that in view you went to see Mays & Mays, and Judge McLain, and they gave you their opinion, and then you closed the deal, didn't you? A. Charley Mays gave me an opinion, I don't know how, but he just looked at it; I don't think he understood it. Q. And it was after that you closed the deal, wasn't it? A. The same day; yes, sir."

Thus it clearly appears that the statement made by Kinchen, in effect, that Blakney could be compelled to execute to plaintiff a deed to the property whenever as much as one-fourth of the purchase price which Whitley had agreed to pay had been paid, was not a statement of fact, but the expression of opinion on a question of law, and was so understood by Austin. Furthermore, it is clear from the testimony quoted that, at all events, plaintiff did not rely upon Kinchen's opinion on that question alone, but consulted other attorneys in compliance with the suggestion of Kinchen so to do; and that after attorneys of his own selection inferentially, at least, had expressed the same opinion given by Kinchen relative to the proper legal

construction of the contract between Blakney and Whitley, plaintiff made the trade with Kinchen. The facts show that plaintiff and Kinchen were dealing at arm's length; that Kinchen concealed nothing from Austin; and that, in giving his opinion relative to the legal effect of the written contract between Blakney and Whitley, Kinchen was not acting, nor pretending to act, as attorney for Austin. Under those facts, it is clear that plaintiff showed no right to rescind the contract with Kinchen, and the court erred in refusing Kinchen's request for an instructed verdict in his favor. Hawkins v. Wells, 17 Tex. Civ. App. 360, 43 S. W. 816, and authorities there cited.

Accordingly, the judgment in favor of plaintiff against Kinchen is reversed, and judgment is here rendered that plaintiff take nothing of defendant Kinchen. The judgment denying plaintiff any relief against Blakney is undisturbed.

