**CLEBURNE STATE BANK et al. v. EZELL et ux.**

No. 1527.

Court of Civil Appeals of Texas. Waco.

Dec. 6, 1934.

Rehearing Denied Jan. 31, 1935.

R. A. Kilpatrick, of Cleburne, for appellants.

E. A. Rice, of Cleburne, and T. Wesley Hook, of Alvarado, for appellees.

ALEXANDER, Justice.

S. M. Ezell and his wife brought this suit against the Cleburne State Bank and W. E. Boger, one of its employees, to recover the sum of $500 theretofore paid to the bank by Ezell and to cancel a note in the sum of $2350 and a certain deed of trust and chattel mortgage executed by Ezell and his wife to the bank. The plaintiffs alleged that Ezell had been caused to make said payment and to execute said note, deed of trust, and chattel mortgage as the result of threats and duress, and that same was without consideration. At the conclusion of the evidence, the court gave an instructed verdict in favor of plaintiffs and entered judgment accordingly. The defendants appealed.

The pleadings and evidence established that during the cotton season of 1931 S. M. Ezell was the public weigher at Alvarado. In connection with said business, he operated a cotton yard, where cotton was stored in an open yard for hire. For each bale of cotton stored in said yard he issued a ticket, containing the number and weight of the bale and bearing the notation: "Delivered on return of this receipt and payment of all charges." He was also agent for the Alvarado Cotton Warehouse, a bonded warehouse, and, upon delivery of cotton for storage therein, he issued a negotiable warehouse receipt therefor. During said cotton season, J. W. Conn and T. E. McBride were engaged in buying cotton in Johnson county and carried their cotton account with the Cleburne State Bank. When the cotton season was over, Conn & McBride were insolvent, and their account at the Cleburne State Bank was overdrawn approximately $5,700, and said bank had in its possession tickets for 206 bales of cotton that had been stored in Ezell's yard and receipts for 2 bales of cotton that had been stored in the bonded warehouse. It claimed to hold said cotton tickets and receipts as collateral to secure the Conn & McBride account. The bank officials, upon realizing that it would not likely be able to collect the Conn & McBride account, and that the cotton represented by said tickets and receipts had been shipped out of the country, invited Ezell to the bank, and charged that, on account of his alleged negligence in releasing said cotton without a surrender of the tickets, he was responsible for the loss sustained by the bank on the Conn & McBride overdraft, and threatened that, in the event he failed to make settlement at once, the bank would immediately file suit against him and the sureties on his public weigher's bond. He testified that, as a result of said threats, he was put in duress and caused to make the cash payment and execute the note and liens above referred to.

In order to acquit himself of any negligence in permitting said cotton to be removed from his yard without a surrender of the cotton tickets, Ezell introduced evidence establishing the following facts: One Thompson was a cotton buyer at Alvarado. During said season he bought from the producers approximately 1000 bales of cotton that had been stored with Ezell. He did business through a bank at Hillsboro. It was customary for Thompson, when he bought a bale of cotton from a producer, to have the seller draw a draft on the Hillsboro bank for the price of the cotton and attach to it the cotton ticket issued therefor by Ezell. The producer would deposit the draft in a bank of his own choosing. While the draft and cotton ticket were passing through the mail to the Hillsboro bank, Thompson would sell the cotton to Conn & McBride, and draw a draft on the Cleburne State Bank for the price thereof and attach to it a list showing the number and weight of each bale of cotton so sold to Conn & McBride. These drafts were on forms furnished by said bank and bore the notation: "For the account of Cleburne State Bank, T. E. McBride, Cleburne, Texas." The defendant bank would pay said draft upon presentation and

charge same to Conn & McBride's· account. Conn & McBride would immediately forward to Ezell a list of the cotton purchased by them and request him to ship same for them. Ezell would ship the cotton as requested. In this way Conn & McBride would obtain possession of the cotton without surrendering to Ezell the tickets and receipts therefor. Later, when the draft drawn by the producer on Thompson had been paid by the Hillsboro bank, the tickets would be delivered to Thompson, and he would forward same to the Cleburne State Bank, and that bank would hold same as collateral to secure the repayment of the money advanced by it to Conn & McBride and used by them in buying the cotton. All of the cotton represented by the tickets and receipts here involved was handled in this manner. It is conceded that the cotton tickets were nonnegotiable. The two warehouse receipts were negotiable in form, but had not been indorsed to the bank. Ezell testified that he did not know the financial relation existing between Conn & McBride and the bank until long after the cotton had been sold and shipped out of the yard. The evidence establishes that all the money received by Conn & McBride for cotton shipped out of Ezell's yard was deposited in said bank and credited to Conn & McBride's account.

■ The plaintiffs sought to set aside the· settlement agreement entered into between Ezell and the bank on two grounds: First, because said settlement agreement was without consideration; and, second, because Ezell had been caused to enter into the same as the result of threats and duress. Since Ezell admittedly entered into the settlement agreement here sought to be set aside, the burden of proof was on plaintiffs to establish that said agreement was without consideration or was the result of threats or duress as alleged by them. 12 C. J. 365. The case was being tried before a jury, and, unless the evidence established plaintiffs' right to recover with such certainty that reasonable minds could not differ as to the effect thereof, the court had no right to withdraw the case from the jury and instruct a verdict in plaintiffs' favor. 3 Tex. Jur. 1049.

■■ The evidence established without dispute that, at the time the settlement agreement was entered into, the bank was charging Ezell with having been negligent in releasing the cotton represented by the tickets and receipts held by the bank without demanding a surrender of said tickets and receipts, and was contending that on account of

said negligence he was responsible ·for the loss sustained by the bank on the Conn & McBride account. The· bank was asserting a right to recover against Ezell for such loss and was threatening to sue him unless he made a settlement of its claim. It is a well-established rule that an agreement entered into in settlement of a doubtful claim is supported by sufficient consideration. This is true, even though the party asserting such claim in fact had no right to recover thereon, provided he in good faith and upon reasonable grounds believed that he had such right. 9 Tex. Jur. 340; 10 Tex. Jur. 138; 12 C. J. 327; Hunter v. Lanius, 82 Tex. 677, 18 S. W. 201; Walker-Smith Co. v. Pouns (Tex. Civ. App.) 256 S. W. 613, and cases there cited. We cannot say as a matter of law that the claim asserted by the bank against Ezell was so utterly without foundation as not to furnish grounds for a good-faith belief in a right to recover thereon. Whether or not there was an honest assertion of a right to recover against Ezell and whether or not the officials of the bank in good faith believed that Ezell was liable to the bank on the claim asserted were questions of fact to be determined by the jury. 9 Tex. Jur. 341; 12 C. J. 333, 365, 367; Franklin Ins. Co. v. Villeneuve, 25 Tex. Civ. App. 356, 60 S. W. 1014, 1016. Consequently the trial court was not authorized to instruct a verdict in plaintiffs' behalf on this issue.

■■ Neither can the judgment of the court be justified on the theory that Ezell was caused to make the settlement· agreement while under duress as the result· of threats made by the officials of the bank. Ezell testified that the officers of the bank·took him into the back room of the bank and told him·that he was responsible for the loss sustained by the bank on the Conn & McBride account, and that he would have to make immediate settlement thereof or suit would be brought that day against him and the sureties on his public weigher's bond. He further testified ·that it was through the threat to sue him and the sureties on his official bond that he was overcome and caused to make the· settlement agreement in question. The evidence does not establish that he was in any way restrained of his liberty nor that any personal violence was threatened. It is well settled in this state that a threat to resort to civil proceedings which the law gives to a party for the enforcement of his right is not duress, for it is no more than the exercise of a lawful right. 10 Tex. Jur. 77; Houston Ice & Brewing Co. v. Harlan (Tex. Com. App.) 228 S. W. 1090;

Ward v. Scarborough (Tex. Com. App.) 236 S. W. 434, par. 9.

 As before stated, the court instructed the jury to return a verdict for plaintiffs. The defendants filed no objections to the charge, and did not request the submission of any issues to the jury. The plaintiffs here contend that under these circumstances the defendants have waived their right to complain of the action of the court in so instructing the jury. The contrary seems to be the well-established rule in this state. Korn v. Korn (Tex. Com. App.) 15 S.W.(2d) 1017, par. 1; Walker v. Haley, 110 Tex. 50, 214 S. W. 295.

The judgment of the trial court is reversed, and the cause remanded for a new trial.