## TEXAS & NEW ORLEANS R. CO. v. HAWKINS.

### No. 10216.

Court of Civil Appeals of Texas. San Antonio.

Jan. 5, 1938.

Rehearing Granted Jan. 26, 1938.

Baker, Botts, Andrews & Wharton, of Houston, and Brooks, Napier, Brown & Matthews and Harper MacFarlane, all of San Antonio, for appellant.

Chas. J. Lieck, Leonard Brown, and Russell B. Wine, all of San Antonio, for appellee.

SMITH, Chief Justice.

On June 20, 1933, Tea Hawkins received an injury through the negligence of the Texas & New Orleans Railroad Company. On July 18, following, the railroad company compromised and settled the claim with Hawkins, who accepted payment of the agreed amount of $325, and thereupon executed and delivered to the company a release of the latter from all further liability in the matter. Subsequently Hawkins brought this suit to recover damages for his injuries, and in answer to the railroad company's defense of prior settlement and release, sought to set aside that release upon the ground that it was fraudulently procured from him, through false representations of the railroad surgeon. Hawkins recovered, and the railroad company has appealed.

With reference to the compromise settlement and release, the jury found that appellant's physician, who examined appellee, told him on the third or fourth visit that appellee's injuries were "only slight"; that appellee had "nothing wrong with him except a temporary disability due to the accident," and "would be able to go back and work and perform his work in a month." The jury further found that appellee believed and relied upon such representations, which were made to induce settlement, did induce it, and but for which he would not have executed the release. The jury found also, however, that the statements were made by appellant's physician as expressions of his opinion, and not as statements of facts.

The evidence showed, conclusively, that appellee was examined and treated at the time he was injured, and thereafter through the negotiations and conclusion of the settlement of the claim, by his family physician, Dr. Burg.

The evidence also showed, conclusively, that appellee had an attorney of his own selection, one Sasse, throughout the negotiations for and conclusion of the settlement, upon whose advice, and upon whose consultation with appellee's physician, the claim was compromised and settled. Upon the trial appellee attempted to deny that Sasse was his attorney in the transactions, and to repudiate Sasse as such attorney. But this contention was not only unsupported, but was refuted by the undisputed testimony of appellee himself, and of other witnesses and by all the other circumstances of the case. Early in the negotiations for settlement appellee advised appellant's claim agent that he had an attorney, to wit, Sasse. The claim agent first offered appellee $250 in settlement of the claim. Appellee rejected this offer. It appears that Sasse then took up the matter, resulting in an offer of $325, which Sasse submitted to appellee. With appellee's knowledge Sasse then conferred with appellee's doctor, and reported back to appellee that his doctor said it would "be best to compromise," that appellee would have "no one—no doctor—to stand up for him." Appellee's son was then called, by Sasse, in to appellee's presence, and when the matter of settlement was put up to him, he told his father he "better get that than nothing." It appears that thereupon Sasse called appellant's claim agent, and advised him of the agreement upon $325. In pursuance of that advice, the claim agent prepared the settlement papers upon that basis, and with a notary repaired to appellee's home. It is undisputed that the release was read aloud to appellee by the notary, whereupon appellee executed and acknowledged it, in the presence of members of his family, the claim agent, the notary, an acquaintance named Sanchez, and his attorney, Sasse. Sasse and Sanchez signed the release as witnesses to appellee's signature, and then executed and swore to a statement in writing that the release was "read aloud" by the notary "in our presence and hearing, to Tea Hawkins, and that he stated to us that he fully understood its meaning and effect, knew that it was an unconditional release in full, and voluntarily executed it for the purposes and consideration therein expressed." The release included appellee's representation that "no representations or statements about them, made by said railroad's surgeons or agents, have influenced me in making, nor induced me to make this settlement." The claim agent then made out a voucher, payable jointly to appellee and Sasse, his attorney, for $325. It was then indorsed by appellee and Sasse,

who had it cashed, and, after deducting his attorney's fee of $60, paid over the balance to appellee, who accepted it, and the settlement was thereby consummated.

 We conclude from the foregoing evidence, undisputed and consisting in the main of the testimony of appellee himself, that appellee had an attorney and a physician of his own selection, and that he made the settlement upon their and his son's advice, and under their direction. Appellant's physician, whose representations are alleged, and the jury found, to have deceived appellee into executing the release, was not present at its execution, and had not seen or communicated with appellee for several days prior to that settlement, and had no part in the negotiations which culminated in the agreement to settle. The advice of appellee's attorney, his physician, and his son had intervened since appellant's physician had given his opinion of appellee's condition. The physician was not present at the execution of the release, had not seen or communicated with appellee for several days prior thereto, took no part therein, and, so far as the record shows, knew nothing of the negotiations for settlement, which were carried on solely between the claim agent upon the one part, and by appellee, his attorney, his son, and his physician upon the other.

It is true that appellee testified, mostly in general terms, upon the last trial (the case had been previously tried) that he was induced to compromise his claim by statements found by the jury to have been made to him by appellant's physician. But he also repeatedly testified, particularly upon the former trial, that he was led to settle by the expectation of getting more money later than that obtained by the settlement; that he understood, when the claim agent offered $250, that he would be paid more later; that he was assured by his attorney, Sasse, that if he would settle now for $325 he (Sasse) "would hold them up for $12,000" more. Aside from the conclusive and undisputed evidence that appellee was induced to make the settlement, and execute the release for $325, upon the advice of his attorney, his son, and his physician (as communicated to him by his attorney), the extraneous contention that appellee was induced to settle by an earlier opinion expressed to him by appellant's physician is rendered less probable, if not efficiently overcome, by his hope or expectation of "getting more money" in some sort of subsequent process. Certainly, it is true that, aside from the conclusive showing that appellee executed the release at the instance, and upon the advice of his attorney, physician, and son, the evidence upon which appellee relies to show fraud upon the part of appellant's physician was not of that clear or satisfactory character essential to sustain actionable fraud. That the release was deliberately executed, with all the solemnity and incidents of a written contract, is conclusively shown and not questioned in this litigation, and ought not to be lightly abrogated by vague and inconclusive testimony of the interested party, and against the overwhelming and undisputed testimony and circumstances present in this case.

There is no occasion to discuss other questions raised in the appeal.

The judgment is reversed and the cause remanded for another trial.

### On Motion for Rehearing.

 On further consideration we have concluded that judgment should be rendered in this case, rather than remanded. The case has been twice tried, and was apparently fully developed upon the last trial. We can see no purpose to be accomplished upon another trial.

Appellant's motion for rehearing will be granted, the order of remand set aside, and judgment here rendered that appellee take nothing by reason of the suit.