## MANN v. RUGEL.

### No. 14173.

Court of Civil Appeals of Texas. Dallas.
March 31, 1950.

Otis Bowyer, Jr., Dallas, for appellant.
Patton & Giles, Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from a judgment having its inception by way of an alleged fraudulent transaction in connection with the sale of store fixtures or equipment, with a lease covering the premises where the fixtures were located. The case was tried to a jury, with facts submitted on special issues which were answered favorably to the plaintiff Paul Rugel (appellee herein); accordingly he was awarded damages against the defendant Roy Mann (appellant herein) and his alleged agent J. A. (Lon) Smith, jointly and severally, in the sum of $1,980. Roy Mann alone appealed and will be hereinafter alone designated defendant.

There is no contention of any fraudulent representations made by the defendant or his agent Smith as to the sale of the fixtures, and we are of the opinion that the evidence shows no manifest intention to defraud the plaintiff in regard to the lease. The suit hinges on an implied contract which plaintiff contends tantamounts to fraud as to induce him to purchase the fixtures and to execute the sublease contract. The suit is one in tort.

In consonance with plaintiff's petition and evidence adduced on trial, the defendant Mann, on or before November 5, 1947, was in possession of the premises under long-term lease with the owner of the property. His lease restricted the premises to a "retail store and not otherwise"; and, being desirous to sell the fixtures with the lease, defendant listed the property with Smith, a real estate dealer, for sale. Smith, with the tacit consent of defendant Mann, placed an advertisement in a Dallas newspaper reading: "Barbecue Location. Best available site in City. Will sell present equipment with long lease on property. $2,500. J. A. (Lon) Smith." About the same time Smith contacted the plaintiff in reference to the advertised property, which in time culminated in the sale of the equipment at $2,500 with sublease in terms and restricted covenant as in the top-lease contract,—that the premises be used as a "retail store and not otherwise."

It was the purpose of the plaintiff, in purchasing the equipment and obtaining the lease, to use the premises as a "Barbecue Stand," and this purpose so expressed to the defendant and the agent Smith. It seems that there was a misapprehension by

all the parties during the negotiation as to whether the restricted term in the lease excluded "barbecue stand." Neither of the parties seemed to know the legal import of the term "retail store" and none ventured an opinion as to whether it included or excluded "barbecue stand"; and no representation was made by the defendant or Smith that same could be used other than as the restricted covenant might apply. Whereupon defendant Mann suggested to the plaintiff that he make inquiry of the owner of the premises, and consult an attorney of his own selection as to whether a "barbecue stand" is, in legal import, a "retail store"; or whether the restricted covenant in the top-lease contract bars the use of the premises for a barbecue stand. Soon thereafter, in deference to the suggestion, the plaintiff secured a copy of the top-lease, went to the office of the landlord (owner of the premises), and, knowing the potency of the restricted covenant to him, and cognizant of the uncertainty of its legal import, did not ask the landlord (an eminent attorney) to predetermine its legal effect. And, too, thereafter the plaintiff took the lease contract to a lawyer of his own selection (another eminent attorney) and again failed to ask any question as to the legal import of the restricted covenant. Thus, in absence of a legal opinion, the plaintiff caused his lawyer to prepare the sublease involved in this suit, in the exact terms of the top-lease, restricting the use of the premises to "retail store and not otherwise." Subsequently, on November 15, 1947, the parties, plaintiff and defendant, executed the sublease contract in duplicate, and, in accordance therewith, plaintiff paid to defendant the consideration for the fixtures and at the same time deposited with the defendant $1,200 to be applied to the last six months of the lease period, to be retained by the lessor in event of default of any of its terms.

Plaintiff contends in pleadings and evidence that, "as a result of the advertisement" aforesaid, and representations of the defendant and his agent Smith, in consonance with the sublease of the premises restricting its use to "retail store and not otherwise," he was induced to consummate the transaction, and immediately thereafter took possession of the fixtures and premises. Subsequently, on learning that the owner would not permit the premises to be used for a "barbecue stand," plaintiff sought rescission of the sale, which defendant refused; and as a result thereof plaintiff formed a partnership with another party to take the lease and premises for operation of a "package store" therein, paying the rental of $200 per month to the owner as it accrued up to August 1, 1948. Plaintiff's evidence is that the "package store" proved unprofitable; hence he sold the fixtures and lease to Bankers Investment Company for the sum of $2,500, which sum, together with "about $300" profit received from the liquor venture, amounted to a salvage of his loss of "about $2,800" out of the contract with the defendant.

It will be seen from the record that there is no evidence showing or tending to show what the plaintiff intended to sell to the consuming public other than what the term "barbecue stand" may imply. The term "barbecue stand" manifestly is as indefinite as the term "retail store." However it may be said, in either case, that the intention of the parties is a matter of proof. A "barbecue stand" may be classed as a "retail store," depending upon the kind of dispensable goods sold to the consuming public. If you give the term "barbecue stand" the meaning of a "restaurant" where food is consumed at the premises, such place would not be a "retail store." In Debenham v. Short, 199 S.W. 1147, the Texarkana Court of Civil Appeals held that the ordinary signification of the words "cafe" or "restaurant" does not imply a "store" or "shop"; while in other states self-service food markets are designated "retail stores." Kaypar Corp. v. Fosterport Realty Corp., Sup., 69 N.Y.S. 2d 313; Leonard Inv. Co. v. Board of Adjustment of City of Trenton, 122 N.J.L. 308, 4 A.2d 768; Commonwealth v. Moriarty, 311 Mass. 116, 40 N.E.2d 307; Petros v. Superintendent and Inspector of Buildings of City of Lynn, 306 Mass. 368, 28 N.E.2d 233, 128 A.L.R. 1210. Thus it may not be said that a "barbecue stand," without more, is, as a matter of law, out-

side the term "retail store," as a basis for implied fraud. We have this situation: The plaintiff wants to buy a business from the defendant,—consisting of fixtures, with a lease on the premises. He and the parties with whom he is dealing are undecided as to the restriction recital as to the use of the premises. Plaintiff takes the top-lease to his own lawyer, not, as he says, for advice or interpretation of the restricted covenant, but to have him examine it; then causes his lawyer to draft the contract in question. Previously plaintiff consulted the owner of the building in reference to the use of the premises. From such consultation the owner gets the impression that plaintiff wants to run a "package store"—which is agreeable to him. The defendant, or his agent Smith, did not attempt to hinder plaintiff in any way from making investigation as to whether the premises can be used for the purposes intended; and there is no claim in pleadings, and no proof, purporting to charge the defendant and his agent, or either of them, with the practice of any artifice or fraud to prevent the plaintiff from making a full and complete investigation of all matters affecting the transfer of the lease, or the use thereof. On the other hand, they suggested to defendant that he seek such investigation to his own satisfaction.

▮▮▮ In the light of the record, the rule is: "Where a party who claims to have been defrauded had the means to have discovered the fraud, if any existed, and undertakes to investigate for himself, and does make such investigation as he deems necessary, and is not hindered or prevented from doing so by any act of the other party, it must be held as a matter of law that he has knowledge of everything that a proper investigation would disclose, and hence would not be justified in acting on fraudulent representations, if any were made to him, merely because they were made to him." 20 Tex.Jur. pp. 62-63. "If the purchaser, choosing to judge for himself, does not avail himself of the knowledge or means of knowledge open to him or his agents, he cannot be heard to say that he was deceived by the vendor's rep-

resentation * * * It is his own folly * * * not to use the means of knowledge within his reach * * * Courts of equity do not sit for the purpose of relieving parties * * * who refuse to exercise a reasonable diligence." 1 Story's Equity, sec. 284; Jones v. Herring, Tex.Civ.App., 16 S.W.2d 325. And, "Where it appears that an investigation was undertaken, the party is charged with the knowledge of everything that the inquiry should reasonably have disclosed." (Citing Newman v. Lyman, Tex.Civ.App., 165 S.W. 136; Hawkins v. Wells, 17 Tex.Civ.App. 360, 43 S.W. 816) 7 Tex.Jur. 923, para. 25. And, "A misrepresentation as to the legal effect of a lease is not of itself actionable fraud." 35 Cor.Jur. 1162, sec. 433, Note 26; 51 C.J.S., Landlord and Tenant, § 223.

In 35 Cor.Jur 1002, sec. 110, Note 72(a), it is said: "A sublessee was chargeable with notice by implication of every fact affecting the rights of his lessor, and discoverable by examination of its lease, and of every fact with which he, by reasonable diligence, ought to have become acquainted, and hence was charged with notice that the lease to his lessor demised the premises for use as a bakery only * * *." See also 51 C.J.S., Landlord and Tenant, § 48. In Kinchen v. Austin, Tex.Civ.App., 179 S.W. 924, it was held that where a party told his assignee the legal effect of the assignment, that constituted an expression of opinion and did not constitute fraud. In Mitchell v. Small, Tex.Civ.App., 45 S.W. 2d 403, a lessor made certain statements as to her interest under a deed and her authority to make a lease of certain minerals, she not being a lawyer, the court held that such was an opinion on a question of law which could not be the basis of a fraud action. In Guitar Trust Estate v. Boyd, Tex.Civ.App., 120 S.W.2d 914, the court held that any statement that it would be impossible to obtain a permit to drill on certain property constitutes an opinion on a question of law not amounting to legal fraud.

At the conclusion of the evidence the defendant moved for peremptory instruction; and, again, motion for judgment non obstante veredicto. The trial court over-

588

ruled both motions and, on motion by the plaintiff, entered judgment on the verdict of the jury. The defendant timely assigned error to the action of the court and, accordingly, presents here points of error germane to his assignment, in effect that, as a matter of law, the evidence is insufficient for judgment in favor of the plaintiff. We sustain the contention of the defendant. We therefore reverse the judgment of the court below as to the defendant Mann, and, as Smith did not appeal, affirm the judgment as to him; accordingly enter judgment that plaintiff take nothing by his suit against defendant Mann, and that the defendant Mann have judgment for his costs both on appeal and in the court below.

Affirmed in part; reversed and rendered in part.