**DIAL TEMP AIR CONDITIONING COMPANY et al., Appellants,**

v.

**Charles H. FAULHABER, Appellee.**

No. 15669.

Court of Civil Appeals of Texas.

Dallas.

July 15, 1960.

Rehearing Denied Oct. 21, 1960.

84

Tobolowsky, Hartt, Schlinger & Blalock, Dallas, for appellants.

Wilbur T. Knape, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Charles H. Faulhaber filed suit in 1957 against Dial Temp Air Conditioning Company, a corporation, Hugh S. Martin, individually and as president of the corporation, and Tip Graham, individually and as vice-president of the corporation. Appellee sought damages under Art. 4004, Vernon's Ann.Civ.St. resulting from the alleged fraudulent sale to him of corporation stock which he had purchased in 1951. Tip Graham was later dismissed as a party to the litigation.

On March 13, 1959 a judgment based on a jury verdict was rendered in favor of appellee for $15,000, of which $5,000 was for actual damages and $10,000 for exemplary damages.

On December 1, 1951 appellee Faulhaber bought 60 shares of stock in Lone Star Air Conditioning Company for a consideration of $6,000, his check for that amount being made payable to the company. On that same date the name of the company was changed to Martin-Johnson Engineering Company. In October 1952 a stock certificate for 65 shares of stock in Martin-Johnson Engineering Company was issued to appellee, representing the 60 shares of stock bought in December 1951 and five shares bought later from Ivy Joe Stewart for a consideration of $500. In September 1955 the name of the company was changed to Dial Temp Air Conditioning Company. The charter amendment shows that appellee was then one of three members of the Board of Directors, the other two members being appellant Martin and Tip Graham. The capital of the company was recited to be $100,000, all paid in.

Appellee Faulhaber charges various acts of misconduct on the part of Martin as president of the company. As a result he employed a lawyer in February 1957. On February 28, 1957 Dial Temp Air Conditioning Company, after a change of name, ceased doing business. On that same day appellee, with his attorney present, executed a contract for the sale of his stock to Martin, and a release of all his claims against Martin and Dial Temp Air Conditioning Company for a consideration of $1,828.

The material portions of the release are as follows:

"In consideration of the payment of $1828.00 by Hugh S. Martin to the undersigned, receipt of which is hereby acknowledged, I, Charles H. Faulhaber, do hereby transfer to Hugh S. Martin 65 shares of stock (all my stock) in the Dial Temp Air Conditioning Co., a private corporation, and accept said sum in full payment for said stock, all salary claims, and in full and complete settlement of all and singular the causes of action, claims and demands of any kind or nature whatever which I have had up to the date hereof, against him the said Hugh S. Martin, individually, or against the Dial Temp Air Conditioning Co by which I have been employed; and do hereby in consideration of the above amount give Hugh S. Martin, individually, and the Dial Temp Air Conditioning Co., full and complete release and acquittance from all salary claims, and from all and every cause of action, claim and demand against the said Hugh S. Martin, individually, and the Dial Temp Air Conditioning Co. as aforesaid up to the date hereof.

"To which witness my hand this the 28 day of February, 1957.

"/s/Charles H. Faulhaber

"Approved:

"/s/ William O Braecklein
"Attorney for Charles Faulhaber."

The instrument bears the statutory acknowledgment of appellee Faulhaber taken before Mary Louise Jacks, a notary public.

Appellee has levelled objections to each of appellants' points on appeal and says that we should not consider them because of certain alleged departures from the rules

of briefing. For example he asserts that (1) point No. One does not follow the correct statement of the nature of the case, and (2) is merely an abstraction and does not present the real question for decision in a concrete manner.

■ Appellee's objections are overruled. While appellants' points on appeal, as drawn, are open to criticism as to form, in substance they clearly point out the specific grounds of appellants' appeal. Therefore we shall proceed to consider them. Rule 422, Texas Rules of Civil Procedure.

■ It is undisputed that appellee Faulhaber, executed the written release on February 28, 1957, and that in doing so he had the services and advice of his own attorney. At this time he had full knowledge of the claims against appellants, which claims he relies on as a basis for his recovery of this judgment. Therefore, until set aside the release must stand as a bar against appellee's claim in regard to the fraudulent sale of corporation stock, which claim is the basis of appellee's suit against appellants. Hart v. Traders & General Ins. Co., 144 Tex. 146, 189 S.W.2d 493; Atkins v. Womble, Tex.Civ.App., 300 S.W.2d 688. We think it is significant that no one claims in pleadings or testimony that the release is ambiguous. The case was not tried on that theory.

Appellee obviously recognized the importance of the release for in his second amended petition he alleged that he was caused to execute the release (1) by certain fraudulent misrepresentations made to him by Martin between February 16, 1957 and February 28, 1957, the date the release was executed; and (2) by certain threats which amount to "persuasion, coercion and duress."

No issues were submitted to the jury with reference to the alleged fraudulent misrepresentations in regard to the procurement and execution of the release. Appellee contends that in the absence of such issues it must be held that the trial court in support of the judgment made implied findings under Rule 279 T.R.C.P. in regard to the said fraudulent misrepresentations.

■ We cannot agree with appellee. The alleged fraudulent representations were alleged as an independent grounds of defense against the legal effect of the release. Not having been submitted, the particular defense must be held to have been waived. Rule 279 T.R.C.P.; Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Long v. City of Austin, Tex.Civ.App., 265 S.W.2d 632.

Further, though appellee in his pleadings and brief makes general charges of fraud in the procurement and execution of the release, he does not point out any evidence in the record in support of such charges. Quite the contrary he, himself, testified that by about February 15, 1957 he had ceased to believe appellant Martin. It was Martin who then suggested that appellee should employ an attorney to advise him in matters pertaining to the settlement which the parties were negotiating. Sometime between February 17, 1957 and February 21, 1957 appellee employed an attorney, William O. Braecklein, whom he consulted in regard to his settlement with Martin and his execution of the release. It will be observed that the written release was signed and acknowledged by appellee before a notary public, and that the instrument also bears the written signed approval of appellee's attorney.

Appellants' first point on appeal is that the court erred in failing to direct a verdict for appellant and in submitting special Issue No. Six to the jury as there was no evidence or insufficient evidence to support such issue.

Special Issue No. Six, and the jury's answer were as follows:

"Do you find from a preponderance of the evidence, that plaintiff, Charles H. Faulhaber, was caused to sign the release dated February 28, 1957, by

·duress? Answer 'yes' or 'no'. Answer 'yes'."

The only testimony in the record ·with reference to duress that has been brought to our attention was offered by appellee. He testified that Martin told him (1) if he did not sign the release he would be held liable on the company's building lease, which still had three and a half years to run; and (2) Martin also told him that he would counter-sue him, Faulhaber, if Faulhaber, "took this thing to court and didn't prove what I charged him with".

Martin denied that he told appellee he would be held liable on the lease, but for present purposes we must accept appellee's statement as true.

██ It is our opinion that as matter ·of law under the undisputed facts of this ·case appellants' statement that appellee would be liable on the company lease unless he signed the release, did not constitute duress. Martin was expressing a legal opinion. In the absence of any fiduciary relationship, or any proof of superior knowledge taking advantage of ig-·norance, such expression does not amount to duress. Mann v. Rugel, Tex.Civ.App., 228 S.W.2d 585; Safety Casualty Co. v. McGee, 133 Tex. 233, 127 S.W.2d 176, 121 A.L.R. 1263; Panhandle & S. F. Ry. Co., v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077. As we have already stated, appellee himself testified, referring to Martin, that by February 15, 1957 he had ceased to "believe him"; appellee also testified that appellant Martin during their negotiating suggested that appellee employ an attorney, ·which appellee did.

Moreover we think that Martin's statement that appellee would be liable on the lease does not constitute duress because the facts were equally available to both ·parties, and appellee either knew, or by the exercise of reasonable diligence should have known that he would not be held liable. Mann v. Rugel, Tex.Civ.App., 228 .S.W.2d 585; Duncan v. Texas Employers'

Insurance Association, Tex.Civ.App., 105 S.W.2d 403, 405; Conklin v. Missouri Pacific Ry. Co., 331 Mo. 734, 55 S.W.2d 306. Appellee himself testified that he had told his attorney, Braecklein, about appellants' threat regarding the lease, and Braecklein "didn't seem to be perturbed about it." Braecklein testified that he talked to the landlord and was told that the landlord had no intention of trying to hold appellee liable on the lease.

Further the alleged statement about legal liability under the lease, does not amount to duress because at the time he signed the release, appellee was represented by legal counsel. As we have said, the statement was a legal conclusion on the part of Martin. Appellee had the services and advice of his attorney. He knew or should have known that he was not liable on the lease. Texas & N. O. Ry. Co. v. Hawkins, Tex.Civ.App., 112 S.W.2d 1107; Kinchen v. Austin, et al., Tex.Civ.App., 179 S.W. 924, 926. Braecklein testified that in his discussion with the landlord he had been informed that the landlord had other uses for the property and would not only not make any claim against individuals, but would release the company too. Knowledge of his attorney is to be imputed to appellee. Prichard v. Cowick, Tex.Civ.App., 287 S.W.2d 689; Farmers Mutual Royalty Syndicate, Inc., v. Isaacks, Tex.Civ.App., 138 S.W.2d 228; 5 Tex.Jur.2d 78.

██ What, then, of the other alleged act of duress, namely, that appellant Martin threatened to enter a counter-suit against appellee if appellee took the matter to court and was unable to prove his charges against Martin? It is to be observed that Martin did not simply threaten appellee with a lawsuit. Martin said he would sue appellee only if appellee went to court *and failed to prove his case*. Faulhaber had made charges of dishonesty and misconduct against Martin as president of the corporation.

Martin's statement was merely the assertion of a legal right, and the assertion

of a legal right, though made in the form of a threat, does not constitute duress. Hubacek v. Manufacturers Cas. Ins. Co., Tex.Civ.App., 247 S.W.2d 173; Kunkel v. Red River Nat. Bank in Clarksville, Tex. Civ.App., 202 S.W.2d 962; Cleburne State Bank v. Bzell, Tex.Civ.App., 78 S.W.2d 297; Trigg, et al. v. Shelton, Tex.Com. App., 249 S.W. 209; Ward v. Scarborough, et al., Tex.Com.App., 236 S.W. 434.

We agree with appellants that there was no evidence to support the submission of special issue No. six. The jury's verdict furnishes no grounds for the rescission or cancellation of the instrument of February 28, 1957 whereby appellee Faulhaber released all claims against appellants. For that reason we would ordinarily hold that we should reverse the judgment because of the court's failure to sustain appellants' motion for instructed verdict, but the first five special issues present difficulties which we shall discuss later in this opinion. Appellants' first point is sustained insofar as it attacks the submission of Special Issue No. Six.

In his second point appellant says it was error to submit special issue No. Seven to the jury because (1) there was no evidence to support it; (2) there was insufficient evidence to support it; (3) it is multifarious; (4) and the instrument accompanying it constitutes a comment on the weight of the evidence.

■ Special Issue No. Seven, and the instructions accompanying it, and the jury's answer were as follows:

"Do you find from a preponderance of the evidence, that the defendant, Hugh S. Martin, made a false representation of a past or existing material fact to plaintiff, Charles H. Faulhaber, or false promise to do some act in the future, which was made as a material inducement to said plaintiff to purchase the 65 shares of stock in Martin & Johnson Engineering Company, but for which promise the said plaintiff, Faulhaber, would not have purchased said stock:

"Answer 'yes' or 'no'. Answer: 'yes'.

"In considering your answer to the foregoing question you are instructed that actionable fraud in this State, with regard to transaction in stock in corporations, shall consist of either a false representation of a past or an existing material fact, or a false promise to do some act in the future, which is made as a material inducement to another party to enter into a contract, but for which promise said party would not have entered into said contract.

"You are instructed that it is immaterial whether the defendant, Hugh S. Martin, knew that he was making false representations if the plaintiff, Faulhaber, believed the representations to be true, relied on them, and close the transaction in question on the faith thereof, and it is no defense that had inquiry and investigation been made that the falsity of the representation would have been discovered."

■ It was error to submit the issue as drawn and its accompanying instruction for these reasons: (1) It is undisputed that appellants sold only 60 shares of stock to appellee, not 65 shares as recited in the issue. The other five shares were sold to appellee by Ivy Joe Stewart about ten months after appellee's purchase of the 60 shares. They are not involved in this suit. (2) The issue is multifarious. It inquires about several different facts, when each of such facts should have been inquired about separately. Fox, et al. v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Rockford Life Ins. Co. v. Tschiedel, Tex.Civ.App., 61 S.W.2d 536; Cogbill v. Martin, Tex.Civ. App., 308 S.W.2d 269; McDonald, Texas Civil Practice, Sec. 12.18 (1950); Hodges, Special Issue Submission in Texas, Sec. 46. (3) The instruction accompanying the issue

was a comment on the weight of the evidence. Rule 272 T.R.C.P. authorizes the trial court to instruct the jury as to the law arising on the facts, but it forbids the court to comment on the weight of the evidence. Rule 277 does not authorize the giving of an instruction which is not necessary to enable the jury properly to pass upon the fact issue submitted, and which is calculated to prejudice one of the parties before the jury. Boaz v. White's Auto Stores, et al., 141 Tex. 366, 172 S.W.2d 481. Further, the theory of our special issue practice, whether good or bad, is to have the jury pass on disputed fact issues without regard to the effect of their answers on the judgment to be rendered. McDonald, Texas Civil Practice, Secs. 12.02 (page 1050) and 12.04.

■ It will be observed that though the term "actionable fraud" is defined in the instruction, it nowhere appears in the issue. There was no need for such a definition or instruction. Based on the jury's answers to the facts inquired about, it was for the judge, not the jury, to decide whether actionable fraud was present. Appellants' second point is sustained.

Appellants' third point on appeal in effect asserts that it was error to submit special issue No. eight because (1) there was no evidence to support the issue; (2) there was insufficient evidence to support it; (3) the issue as phrased was multifarious; and (4) the instruction accompanying the issue was a comment on the weight of the evidence.

■ Special Issue No. Eight, the instruction accompanying it and the jury's answer were as follows:

"What do you find from a preponderance of the evidence, was the actual value of the 65 shares of stock in Martin & Johnson Engineering Company purchased by plaintiff, Faulhaber, at the time of the purchase or delivery of the same?

"Answer in Dollars. Answer: 'No Dollars'.

"In considering this question you are instructed that all persons guilty of fraud, as above defined shall be liable to the person defrauded for all actual damages suffered, the rule on damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the stock at the time of the contract and delivery."

Under Art. 4004 V.A.C.S. the measure of damages for actionable fraud in stock sales is the difference between the value of the property as represented or as it would have been worth had the promises been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract.

We agree with appellants that there is no evidence in the record of the actual value of the shares of stock in December 1951, the time of the contract, in the condition in which they were delivered in October 1952. Appellants attempt to prove by means of a financial statement dated June 1952 that the company had sustained a heavy financial loss during the fiscal year. This statement, though it is referred to as plaintiffs' Exhibit No. Four was not introduced into evidence—at least it is not included in the exhibits shown in the record. Anyway in this case evidence of the company's condition in June 1952 is not evidence of the measure of damages prescribed by Art. 4004 V.A.C.S.

Appellee does not quote or cite us to any evidence as to the value of the shares in 1951 at the time of the contract between appellants and appellee.

In this connection it is interesting to note that the jury was apparently aware of the lack of evidence in support of the issue. After retiring to deliberate the jury sent a note to the court as follows: "If we find no evidence to establish a value of stock purchased—may we answer 'no dollars' or 'no value established in evidence'?".

It is to be observed that special issue No. Eight, like special issue No. Seven, inquires about 65 shares of stock when only 60 shares were involved in the suit.

The issue as framed permits the jury to make a choice of the time at which it would value the stocks: either at the time of purchase, or at the time of delivery. The undisputed facts show that appellee purchased 60 shares of stock in Lone Star Air Conditioning Company. At that time a corporate reorganization was under way. The Corporation's name was changed to Martin-Johnson Engineering Company. Some time after the contract of purchase was entered into 60 shares of stock in the latter corporation were delivered to appellee and he accepted them, later becoming a member of the corporation's Board of Directors.

In our opinion the instruction accompanying Special Issue No. Eight was unnecessary, and was a comment on the weight of the evidence. The instruction also mentioned "fraud, as above defined," thereby referring the jury to the instruction accompanying issue No. Seven, which we have already held was objectionable.

In his fourth point appellant asserts that Special Issue No. Nine and the instruction accompanying it constituted a comment on the weight of the evidence.

Special Issue No. Nine, the instruction accompanying it, and the jury's answer were as follows:

"What do you find from a preponderance of the evidence, to be the amount of exemplary damages you allow and assess herein in favor of the plaintiff, Charles H. Faulhaber, against the defendants, Dial Temp Air Conditioning Company and Hugh S. Martin?

"Answer in dollars. Answer: $10,-000.00.

"By the term 'Exemplary Damages', means compensation allowed by law in addition to actual damages, if any, by way of punishment, and as an example for the good of the public, and may also include compensation for inconvenience and other losses too remote to be considered under actual damages.

"In considering this question you are instructed that all persons making false representations or promises, and all persons deriving the benefit of said fraud shall be jointly and severally liable in actual damages, and in addition thereof, all persons, knowingly and wilfully making such false representations or promises, or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded, in such amount as shall be assessed by the jury, not to exceed the amount of the actual damages suffered."

The issue as drawn is improper because it assumes that some amount must be found as exemplary damages. It is permissible to give a correct definition of the term "exemplary damages" when an issue using the term is properly drawn. But we see no need for the second paragraph of the instructions which amount to a comment on the weight of the evidence. Appellants' fourth point is sustained.

Appellants have presented a so-called fifth point on appeal which we regard as a motion urging us to reverse and render judgment in this case rather than reverse and remand for another trial.

We would be inclined to reverse and render judgment because of the failure of appellee to establish any grounds for setting aside the release. However there are matters in the record of appellants' own making which present difficulties.

Appellants requested the court to submit Special Issues Nos. One to Five inclusive, all of which have to do with the release. These issues inquired (1) whether appellee compromised and settled all claims which he had against appellants by the execution

of the release and the receipt of the $1,828; (2) whether appellee represented to appellants that he would sell his stock and settle all claims for $1,828; (3) whether appellants believed that appellee would settle all his claims and sell his stock for $1,828; (4) whether appellants relied on such representations; and (5) whether appellee secured a preferential position ahead of appellants, and ahead of creditors of the corporation by receiving the $1,828 on February 28, 1957. The jury answered each of the above issues "no".

■ Appellee contends that the jury's answers to the first five issues entitled him to judgment regardless of the jury's answers to Special Issues Nos. Six to Nine inclusive. Since the first five issues dealt only with the release and had nothing to do with the issues regarding appellee's suit for damages under Art. 4004, V.A.C.S., we see no merit in appellee's claim.

■ But appellee goes further and says that since appellants requested submission of the first five issues they will not be allowed to complain after verdict that the evidence was insufficient to support their submission. However the last sentence of Rule 279, T.R.C.P. is to the contrary: "A claim that the evidence was insufficient to warrant the submission of any issue may be made for the first time after verdict, regardless of whether submission of such issue was requested by the complaining party." In construing this provision of the Rule the Beaumont Court of Civil Appeals said that it was designed primarily to make workable Rule 301, which provides for judgment non obstante veredicto, or to avoid conflict between the two Rules. Hicks v. Fredricks, Tex.Civ.App., 286 S.W. 2d 315, 318.

Appellants in this case direct none of their points on appeal at the lack of any evidence, or the insufficiency of the evidence to support submission of the first five issues. They did file a motion for judgment non obstante veredicto under Rule

301, and they argue in their fifth point on appeal that the court erred in overruling their motion. This would indicate that they took the position that there was no evidence to support the jury verdict. But in their motion non obstante veredicto and in their motion for new trial, they attack only Special Issues Nos. Six to Nine inclusive. With reference to the first five issues, in their motion for judgment non obstante veredicto they say: "The first five of these were defensive issues on which these two defendants had the burden of proof. They did not establish their affirmative defenses by a preponderance of the evidence, according to the jury's findings."

■ We again call attention that no one in this case claims the release was ambiguous in its terms. The construction and interpretation of the instrument was therefore a question of law for the judge, not a fact question for the jury. 10-A Tex.Jur. 405. We think it was improper to submit the first five issues, for they permitted the jury to express erroneous legal conclusions contrary to the clear, unambiguous terms of the release. Schoenberg v. Forrest, Tex.Civ.App., 228 S.W.2d 556.

■ However, we are bound by the rule that, except for fundamental error, we cannot consider a matter which we might believe is error, but which was not objected to during the trial, which was not the subject of an assignment of error in a motion for a new trial, and was not the subject of a point of error on appeal. 3 Tex.Jur.2d 377; 438; 452; 460; 461; 4 Tex.Jur.2d 160; 448.

Appellants' motion to render judgment in their favor is overruled. However, for reasons heretofore stated the judgment of the trial court, will be reversed and the cause remanded for another trial.

Reversed and remanded.

CRAMER, J., not sitting.

## On Rehearing

As we stated in our original opinion, until the release of February 28, 1958 is set aside, that instrument stands as a bar against appellee's claim based on alleged earlier fraudulent sale to him of corporation stock. We further held that the record shows no adequate grounds for setting aside the release. Therefore it really becomes immaterial to the outcome of this appeal whether Special Issue No. 7, relating to the earlier alleged fraud, was properly submitted or whether it was subject to the objection that it was multifarious, as we held. However, in view of the possibility of another trial of this case we believe it well for us to discuss the matter further.

Appellee asserts that the issue as submitted is not multifarious. We do not agree with appellee. The issue as framed inquires whether Hugh Martin (1) made a false representation of a past fact, (2) or of an existing fact, or (3) made a false promise in regard to some act in the future, (4) as a material inducement to appellee to purchase the stock, (5) but for which promise appellee would not have purchased the stock.

Appellee relies on the case of Rick, et al. v. Farrell, Tex.Civ.App., 266 S.W. 522. Special Issue No. 7 and its accompanying instructions in this case are almost identical as to form with the issues and instructions in the cited case.

Nevertheless we cannot accept the case as authority for the proper submission of Issue No. 7 in our case in the face of objection that it is multifarious. Examination of the record in Rick v. Farrell, supra, discloses that no objection was made to the issues as there submitted on the ground that they were multifarious. The question was not presented to the court, so was not passed on in the opinion. That being so, the case does not support appellee's contention that the issue No. 7 as submitted in our case was not multifarious, or that it was properly submitted regardless of appellants' objection.

While it has been held that merely evidentiary facts may sometimes be grouped together in one issue, it has long been held that each ultimate issue must be separately submitted if objection is made by either party to a duplicitous or multifarious submission. In addition to the authorities submitted in our original opinion we call attention to the following: Thompson v. Robbins, 157 Tex. 463, 304 S.W.2d 111 (Syl. 6); Buss v. Shepherd, Tex.Civ.App., 240 S.W.2d 382 (Syl. 6); Theobalt v. Wiemann, Tex.Civ.App., 104 S.W.2d 589 (Syl. 3); France, et ux. v. Graves, Tex. Civ.App., 48 S.W.2d 438; Stinnett, et al. v. Paramount-Famous Lasky Corp. of N. Y. et al., Tex.Com.App., 37 S.W.2d 145; Lumbermen's Reciprocal Ass'n v. Wilmoth, Tex.Com.App., 12 S.W.2d 972 (Syl. 4). In the case of Abrams v. Bradshaw, Tex. Civ.App., 2 S.W.2d 917, Judge Vaughan, who earlier wrote the opinion in Rick v. Farrell, supra, stated that special issues shall be submitted distinctly and separately, and answered separately.

It has been held that only definitions of terms which appear in the charge should be given. Fort Worth & D. C. Ry. Co. v. Burton, Tex.Civ.App., 158 S.W.2d 601 (Syl. 12); Wichita Valley Ry. Co. v. Anderson, Tex.Civ.App., 48 S.W.2d 361 (Syls. 3 and 9); Derrick & Mosely, et al. v. Southwestern Portland Cement Co., Tex. Civ.App., 18 S.W.2d 720.

Appellee's motion for rehearing is overruled.